**UNITED STATES, Appellee,**

v.

**Specialist Four Holdon THOMPSON, SSN 464–25–6557, United States Army, Appellant.**

**CM 444070.**

U.S. Army Court of Military Review.

16 Nov. 1984.

---

Robert E. Davis, Esquire, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel William P. Heaston, JAGC, Captain Harry L. Williams, Jr., JAGC, Captain Kenneth G. Gale, JAGC, and Captain Craig E. Teller, JAGC.

Captain Samuel J. Rob, JAGC, argued the cause for the appellee. With him on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Thomas J. Leclair, JAGC, and Captain Jan M. Wamsted, JAGC.

Before SU-BROWN, YAWN and WALCZAK, Appellate Military Judges.

OPINION OF THE COURT

PER CURIAM:

This case was tried on 29 December 1982 in the 3d Armored Division by a court-martial convened by Major General Thurman E. Anderson. Contrary to his pleas, appellant was convicted by a military judge sitting as a general court-martial of rape and assault with intent to commit rape, violations of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920 and 934 (1982). On 5 April 1983, the convening authority, General Anderson, approved appellant's sentence to a dishonorable discharge, confinement at hard labor for 12 years, total forfeitures, and reduction to Private E-1.

Appellant contends, *inter alia*, that General Anderson was disqualified from taking action in this case because he discouraged favorable testimony in extenuation and mitigation; that he was denied a fair sentencing proceeding because of unlawful command influence or the perception thereof; and that General Anderson's illegal actions pervaded and affected every stage of the proceedings, thus disqualifying General Anderson as the convening authority. Although we do not find General Anderson's actions disqualified him from referring a case to trial,[1] we do find that certain remarks by General Anderson create the appearance that appellant's trial was affected by unlawful command influence. We also find, based upon affidavits admitted as appellate exhibits in this case, that serious questions have been raised concerning General Anderson's ability to review and take action on appellant's case.

In *United States v. Treakle*, 18 M.J. 646 (ACMR 1984), this Court found unlawful command influence was present in the 3d Armored Division during the time General Anderson was in command. The unlawful influence consisted of statements by General Anderson which were understood by many in the division to discourage favorable character testimony. General Anderson's statements, as perceived, fell within the ambit of Article 37, UCMJ, 10 U.S.C. § 837, which prohibits coercion or unauthorized influence of actual or prospective witnesses with respect to the content of their testimony. *Cf. id.* at 657 (scope of Article 37 defined).

In *Treakle*, the Court stated:

A finding that unlawful pressure has been brought to bear in violation of Article 37 triggers a rebuttable presumption that the recipient of the unlawful pressure was in fact influenced. (Footnote omitted.) As we construe this presumption of prejudice, the target and the content of the unlawful pressure define the nature and extent of the presumed influence and the resulting prejudice. The presumption may be rebutted only by clear and positive evidence. (Footnote omitted.)

18 M.J. at 657. Applying this analysis to the present case, we find the "target" of General Anderson's comments were service members subject to his court-martial jurisdiction. The "content of the unlawful pressure" was to discourage favorable character testimony. *See United States v. Yslava*, 18 M.J. 670, 672 (ACMR 1984). Given the target and content of Anderson's comments, the "nature and extent of the presumed influence" is that, in each case tried within the 3d Armored Division after General Anderson began disseminating his message, the accused may have been deprived of favorable character witnesses. *See United States v. Schroeder*, 18 M.J. 792 (ACMR 1984). We say "may have been" because General Anderson's comments would have affected the presentation of the defense case only if prospective character witnesses for the accused directly or indirectly heard General Anderson's comments. For purposes of our analysis, however, we presume that appellant was deprived of favorable character witnesses, and thereby prejudiced, since the content of General Anderson's statements and his reiteration of them throughout the command create at least the appearance that unlawful command influence tainted appellant's

---

1. *See United States v. Treakle*, 18 M.J. 646, 654-55 (ACMR 1984).

trial. *See United States v. Johnson*, 14 U.S.C.M.A. 548, 34 C.M.R. 328 (1964).

Having defined the "presumption of prejudice" created by the unlawful command influence exercised by General Anderson, we need only consider whether the Government has rebutted this presumption by clear and convincing evidence. *See United States v. Rosser*, 6 M.J. 267, 272 (CMA 1979). This inquiry is two-fold. The first question is whether character testimony was admissible at trial. If such testimony was admissible, the second question is whether the Government has clearly and convincingly demonstrated by the evidence of record that the accused either was not deprived of such witnesses or, if he was deprived, did not suffer any prejudice. Turning to the facts of this case, we find the Government has failed to meet its burden with respect to either the findings or the sentencing portion of appellant's trial.

■■■ At appellant's trial, character evidence would have been admissible on the merits and during sentencing. In his defense, appellant maintained that the rape victim mistakenly identified him as her assailant. The victim picked appellant out of a lineup held twenty-four days after the offense occurred. An expert in forensic psychology, called on appellant's behalf, opined that the victim's identification was unreliable. Appellant also presented testimony from two soldiers and a female acquaintance in an attempt to establish an alibi. Appellant did not testify about the assault offense but, through cross-examination and argument, tried to show that the incident was consensual. In rebuttal, the Government called appellant's First Sergeant who testified that appellant's reputation for truthfulness was mixed, and he would not believe appellant under oath.

Based on the nature of the charged offenses and the defenses raised in this case, evidence concerning appellant's reputation for peacefulness would have been admissible on the merits. *United States v. Credit*, 8 M.J. 190 (CMA 1980) (character for peacefulness admissible to defend against rape charge). Character evidence to support the credibility of appellant's testimony also would have been admissible since the Government directly attacked appellant's reputation for truthfulness. *See United States v. Luce*, 17 M.J. 754 (ACMR 1984); Mil.R.Evid. 608(a)(2). No such evidence was offered, and the record provides no explanation for its absence. During the sentencing phase of trial, as in all courts-martial, evidence concerning appellant's character would have been admissible. Manual for Courts-Martial, United States, 1969 (Revised edition), para. 75c. The only evidence presented in extenuation and mitigation was appellant's unsworn statement. Again, the record provides no explanation for the absence of character witnesses.

■■■ The presumption that appellant was prejudiced by General Anderson's actions remains unrebutted when the record of trial does not explain the absence of defense witnesses.[2] *United States v. Schroeder*, 18 M.J. at 795. Although we may infer the probable reasons for the absence of such witnesses when the record reveals that the defense counsel and appellant were fully aware of General Anderson's activities,[3] we decline to make such inferences when, as

2. As a result of this Court's decisions in 3d Armored Division cases, a dichotomy exists between cases where favorable character witnesses appear and those where no witnesses appear. In the former cases, the testimony by such witnesses has been held sufficient to sustain the Government's burden to rebut the presumption of prejudice created by General Anderson's remarks. In the latter cases, the Government rarely has been able to meet its burden based upon the evidence of record. An accused who, as a practical matter, would have been unable to produce one favorable witness receives a rehearing—at least on the issue of command influence—simply because the record is silent; whereas, an accused who presents favorable character testimony receives no relief because the Court finds such testimony rebuts the presumption of prejudice. The apparent dichotomy between these cases occurs because the Court's inquiry ends once the Government has rebutted the presumption of prejudice and no additional evidence has been produced showing that the Government's rebuttal is deficient.

3. *See e.g., United States v. Yslava*, 18 M.J. 670, 673 (ACMR 1984).

here, the issue of command influence was not mentioned at trial.

■ Since character evidence was clearly admissible on the merits and the presumption that appellant was deprived of favorable character witnesses is not rebutted by the evidence of record, we shall order a limited hearing for the purpose of inquiring into whether appellant's trial was affected by unlawful command influence. *See United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). Although in *United States v. Schroeder,* 18 M.J. at 795, this Court ordered a rehearing on sentence after finding the Government failed to rebut the appearance of command influence, *Schroeder* does not dictate the remedy in this case. The Court of Military Appeals in *United States v. DuBay, supra,* established that a fact-finding proceeding is the preferred method for resolving claims of unlawful command influence. *See also United States v. Karlson,* 16 M.J. 469 (CMA 1983). Such a proceeding is appropriate in this case.

Appellant also argues that General Anderson deliberately attempted to pervert the balance of justice in the 3d Armored Division. In support of this argument, appellant has submitted an affidavit procured after the Court's decision in *Treakle.* This affidavit, executed by Lieutenant Colonel (LTC) Mueller, a former commander of a military police battalion located within the general courts-martial jurisdiction of General Anderson, avers that General Anderson's Staff Judge Advocate, Colonel (COL) Bozeman, contacted LTC Mueller about favorable character testimony he had given in a case. Colonel Bozeman allegedly told LTC Mueller that General Anderson was upset about his testimony. Lieutenant Colonel Mueller also avers that COL Bozeman stated "when a commander recommends court-martial, the accused is guilty and should be punitively discharged."

■ Construing LTC Mueller's affidavit in a manner most favorable to appellant, we find it does not affect our determination that General Anderson was qualified to refer appellant's case to trial. *See United*

*States v. Treakle,* 18 M.J. at 654–55. However, the affidavit does raise questions concerning General Anderson's ability to review and act on cases. In response, the Government has submitted an affidavit by COL Bozeman which attempts to explain his discussions with LTC Mueller. Colonel Bozeman's affidavit conflicts in several material respects with LTC Mueller's affidavit. Construed together, these documents squarely raise the issue of whether General Anderson had an interest in appellant's case which disqualified him from taking action. The proper forum for resolving the conflicting facts presented by these documents is an adversary proceeding where appellant may confront the witnesses on the issue. *See United States v. Karlson, supra.*

The record of trial is returned to The Judge Advocate General for a limited hearing before a military judge appointed by a different convening authority. The military judge will conduct a hearing for the purpose of receiving all available evidence bearing on the following issues:

1. Was appellant deprived of favorable character testimony because of remarks by Major General Thurmon E. Anderson concerning testimony at courts-martial proceedings?

2. If appellant was not deprived of character witnesses, was Major General Thurmon E. Anderson disqualified from reviewing and acting on appellant's case because of a personal interest in the matter?

In the event the convening authority to whom this case is referred deems a hearing limited to the issue of command influence impracticable, he may order a rehearing on the findings and sentence, or dismiss the charges. If the convening authority determines a limited hearing is practicable, the military judge will hear the respective contentions of the parties, permit the presentation of witnesses and evidence, and enter findings of fact and conclusions of law with respect to the two issues listed above. As to the first issue, such findings shall specifically address the following questions:

A. Did appellant seek witnesses on the merits or during sentencing who would testify about appellant's good character, his reputation for peacefulness, or his reputation for truthfulness and veracity?

B. If appellant sought such witnesses, did the witnesses refuse to testify because of comments or actions by General Anderson or others in the prospective witnesses' chain of command? If so, what was the nature of such comments or actions?

C. What were the names of the witnesses and what would the substance of their testimony have been concerning appellant's good character, his reputation for peacefulness, and his reputation for truthfulness and veracity?

In addition to the preceding questions, the military judge shall address any additional questions or issues that may arise during this hearing which he determines are material or relevant to the overall issue of unlawful command influence. If the military judge determines that the proceedings by which the accused was originally tried were infected with command influence, he will set aside the sentence or the findings and sentence, as may be required, and return the record to the convening authority who may order a rehearing. If the military judge determines that command influence did not affect appellant's trial, he shall also enter findings that respond to, but are not necessarily limited to, the following questions:

A. Did COL Bozeman call LTC Mueller at General Anderson's request on the two occasions mentioned in LTC Mueller's affidavit? If so, was such request implicit or explicit?

B. What was said during the conversations between General Anderson and COL Bozeman and during the conversation between COL Bozeman and LTC Mueller?

C. Did General Anderson, or someone on his staff, contact LTC Mueller's rater or senior rater about LTC Mueller's officer evaluation report and complain about LTC Mueller's testimony or actions with respect to any court-martial convened during Gen-

eral Anderson's term as Commander, 3d Armored Division?

D. Was LTC Mueller told not to testify for soldiers pending courts-martial convened during General Anderson's term as Commander, 3d Armored Division?

Upon completion of this hearing, if the military judge determines that General Anderson was not qualified to review and act on appellant's case, he will return the record to the convening authority who will set aside the action by General Anderson and perform a new review and action. The record of trial then will be returned to this Court for further review of appellant's case. If the military judge determines that General Anderson was qualified to review and act on appellant's case, he will return the record to the convening authority who will forward the record to this Court.