**UNITED STATES, Appellee,**

v.

**Sergeant Michael E. GLIDEWELL, 531–64–2683, United States Army, Appellant.**

**SPCM 19095.**

U.S. Army Court of Military Review.

15 Jan. 1985.

---

Captain Michael D. Graham, JAGC, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel William P. Heaston, JAGC, and Captain Harry L. Williams, Jr., JAGC.

Captain Thomas J. Benjamin, JAGC, argued the cause for the appellee. With him on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, and Major Joseph A. Rehyansky, JAGC.

Before SU–BROWN, YAWN and WALCZAK, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

WALCZAK, Judge:

Appellant was tried in the 3d Armored Division by a court-martial convened by Major General Thurman E. Anderson. On 15 December 1982, pursuant to his pleas, he was convicted by a military judge sitting as a special court-martial of drunk driving and operating an unregistered vehicle in violation of Articles 92 and 111, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 911 (1982). On 15 February 1983, Brigadier General Prather, the acting commander for 3d Armored Division, approved appellant's sentence to a bad-conduct discharge, hard labor without confinement for three months, forfeiture of $382.00 per month for six months, and reduction to Private E–1. On 22 September 1983, this Court affirmed the findings and sentence. *United States v. Glidewell*, SPCM 19095 (ACMR 22 Sep.1983) (unpub.).

Before the Court of Military Appeals, appellant argued for the first time that the proceedings against him were tainted by the exercise of unlawful command influence by General Anderson. The Court of Military Appeals remanded the case to us for consideration of this issue. In *United States v. Treakle*, 18 M.J. 646 (ACMR 1984), this Court found unlawful command influence was present in the 3d Armored Division. We discussed the impact General Anderson's activities had on the administration of military justice in the 3d Armored Division in that opinion and several subsequent ones. *E.g., United States v. Thompson*, 19 M.J. 690 (ACMR 1984); *United States v. Schroeder*, 18 M.J. 792 (ACMR 1984); *United States v. Yslava*, 18 M.J. 670 (ACMR 1984). We do not reiter-

ate those discussions here except to note that in *Thompson* this Court had before it two documents which were not before the Court in *Treakle.* These documents, which have also been admitted in this case, consist of an affidavit by Lieutenant Colonel (LTC) Mueller, a former commander of a military police battalion within the general court-martial jurisdiction of General Anderson, and an affidavit by Colonel (COL) Bozeman, General Anderson's Staff Judge Advocate. In *Thompson,* slip op. at 5, we found the averments in these affidavits raise the issue of whether General Anderson had an interest in Thompson's case which disqualified him from reviewing and acting on it. Although *Thompson* did not discuss the nature of this suspected interest, we find it appropriate to do so at this time since the nature of that interest affects Brigadier General Prather's qualification to review and act on this case.

In his affidavit, LTC Mueller avers that COL Bozeman contacted him about giving favorable character testimony in a case and communicated General Anderson's displeasure with such testimony. According to LTC Mueller, COL Bozeman indicated General Anderson could not understand how a battalion commander could allow a soldier to be court-martialed and then testify at trial about the soldier's good character. Lieutenant Colonel Mueller also states that COL Bozeman made a statement to the effect that, when a commander recommends court-martial, the accused is guilty and should be punitively discharged. Since LTC Mueller's affidavit suggests that COL Bozeman contacted him pursuant to General Anderson's directive, these averments raise serious questions concerning General Anderson's ability to impartially review a case after he referred it to a court-martial. Colonel Bozeman's affidavit, given in response to LTC Mueller's affidavit, raises some questions concerning the substance of his conversation with LTC Mueller.

In *Treakle,* this Court recognized that General Anderson had given speeches which stressed the need for consistency in handling military justice matters. The Court was aware that General Anderson had expressed concern about commanders who would recommend trial by general or bad-conduct discharge special courts-martial and then testify during sentencing that the accused was a "good soldier" and should be retained. 18 M.J. at 650. The Court found that the remarks by General Anderson were made in good faith and were intended to promote appropriate recommendations for courts-martial. The Court also found no evidence that General Anderson's comments reflected a predetermination on his part concerning either the guilt of an individual who was to be court-martialed or the appropriate punishment for that individual. *See also United States v. Yslava,* 18 M.J. at 674. As recognized in *Thompson* the validity of these conclusions are questionable given the evidence concerning the conversation between COL Bozeman and LTC Mueller.

The topic of conversation between COL Bozeman and LTC Mueller indicates General Anderson may have been concerned with more than merely emphasizing that commanders give careful consideration to a case before recommending a court-martial. The alleged statement by COL Bozeman that "when a commander recommends court-martial the accused is guilty and should be punitively discharged," if interpreted literally, manifests a belief that when a case is referred for court-martial the commander has made a determination concerning the accused's guilt and the appropriate punishment for the charged crime. If General Anderson applied this particular theory to cases he referred to courts-martial, the referral would reflect his conclusion that the accused was guilty and should be punitively discharged. Once such a determination is made, General Anderson's ability to later review the findings and sentence with an open mind is highly suspect. *Cf. United States v. Wise,* 6 U.S. C.M.A. 472, 20 C.M.R. 188 (1955) (convening authority required by law to review accused's sentence with an open mind).

After considering all the evidence before the Court, we cannot say that General Anderson possessed the requisite impartiality

to perform the post-trial review function.[1] Moreover, the issue concerning General Anderson's qualification to review a case is not necessarily limited to General Anderson. As a practical matter, it is almost impossible to expect that Brigadier General Prather, acting in General Anderson's stead, would disregard a view unmistakably expressed by his own commander.[2] *See United States v. Jones*, 2 M.J. 353, 355 (AFCMR 1976). General Prather's ability to impartially review a case is thus dependent upon the "view" held by General Anderson. Since we are unable to discern the exact nature or practical application of General Anderson's theories concerning the military justice process, we cannot determine whether General Prather, as General Anderson's subordinate, was disqualified from reviewing this case. While an adversary proceeding would be the proper forum for resolving these questions,[3] the nature of the remedy required if General Prather were not qualified to act on this case, coupled with considerations of judicial economy, convinces us that we should simply order a new review and action.[4]

The action of the convening authority, dated 15 February 1983, is set aside. The record of trial is returned to The Judge Advocate General for a new review and action by a different convening authority.

Senior Judge SU–BROWN concurs.*

YAWN, Judge, dissenting:

Appellant, a member of the 3d Brigade, 3d Armored Division, was tried at Butzbach, Germany, on 15 December 1982. Twelve days before appellant's trial, General Anderson addressed the officers of the 2d Brigade, 3d Armored Division, at an officers' call in Gelnhausen, Germany. Either the day before or the day after appellant's trial, General Anderson gave a lecture to the 3d Brigade officers at the officers' club in Friedberg, Germany. Appellant's company commander and battalion commander attended this meeting. Butzbach, Gelnhausen, and Friedberg are in close geographic proximity to each other.

The subject of General Anderson's lectures has been discussed at length by this Court. *See United States v. Treakle*, 18 M.J. 646 (ACMR 1984). These lectures by General Anderson "create at least the appearance that unlawful command influence tainted appellant's trial,"[1] and trigger a rebuttable presumption that appellant was denied favorable character testimony. I find this presumption unrebutted by the evidence in this case. The record contains no evidence that the participants were aware of the command influence problem in the 3d Armored Division. Although two noncommissioned officers testified on appellant's behalf during the sentencing portion of his trial, this testimony does not clearly and convincingly show that command influence did not affect the proceedings, given the closeness in time and place between appellant's trial and General Anderson's lectures and the absence of any

---

1. We recognize that *United States v. Thompson*, 19 M.J. 690 (ACMR 1984), suggests General Anderson may have had an interest in that case which made him an accuser. While such an interest would disqualify General Anderson from taking post-trial action, *see United States v. Corcoran*, 17 M.J. 137 (CMA 1984), as this opinion makes clear, we question General Anderson's ability to review a case because he may have lacked the requisite impartiality to perform that function not because he had a special interest in any particular case.

2. This concern does not automatically arise when an individual acts as a successor to an office. *See United States v. Kennedy*, 8 M.J. 577 (ACMR 1979), *pet. denied*, 9 M.J. 6 (CMR 1980).

3. *See United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

4. The facts of record indicate the presence of command influence may not have affected appellant's pleas of guilty or his sentence. *See United States v. Treakle*, 18 M.J. 646, 657–58 (ACMR 1984); *United States v. Yslava*, 18 M.J. 670, 672 (ACMR 1984). Given our disposition of this case, we do not finally resolve these issues.

* Senior Judge James C. Su-Brown took final action in this case before his departure from the Court upon his retirement from the Army.

1. *See United States v. Thompson*, 19 M.J. 690 at 692 (ACMR 1984).

officer witnesses on appellant's behalf. Accordingly, I would order a limited hearing to determine whether appellant's trial was affected by unlawful command influence because of General Anderson's remarks. *See United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 41 (1967); *United States v. Thompson,* 19 M.J. 690 (ACMR 1984).

Although my brothers do not reach the same conclusion, the Court's action does place a burden on the convening authority to examine anew the findings and sentence in this case. The issue of command influence raised before this Court was not addressed in the initial review. The convening authority who reviews this case must determine whether the findings and sentence were affected by unlawful command influence and, if so, take effective remedial action, which may include ordering a *DuBay* hearing or a complete rehearing.