**UNITED STATES, Appellee,**

v.

**Staff Sergeant Orlando CORTES, 584–17–2426, United States Army, Appellant.**

**ACMR 8900473.**

U.S. Army Court of Military Review.

3 Jan. 1990.

For Appellant: Colonel John T. Edwards, JAGC, Captain Allen F. Bareford, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Mark E. Frye, JAGC (on brief).

Before MYERS, JOHNSON, and NEURAUTER, Appellate Military Judges.

## OPINION OF THE COURT

NEURAUTER, Judge:

Contrary to his plea, appellant was convicted by a military judge sitting as a general court-martial of distribution of cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (Supp. IV 1986) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to Private E1.

I

Appellant now asserts that the special defense of entrapment was raised at his trial and that the government failed to prove beyond a reasonable doubt that he was not entrapped. We disagree.

The Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial [hereinafter R.C.M.] 916(g) provides that "[i]t is a defense that the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense." The Manual further provides that:

The "Government" includes agents of the Government and persons cooperating with them (for example, informants). The fact that persons acting for the Government merely afford opportunities or facilities for the commission of the offense does not constitute entrapment. Entrapment occurs only when the criminal conduct is the product of the creative activity of law enforcement officials.

R.C.M. 916(g) discussion.

We must first determine whether there was evidence presented at this court-martial which would raise the defense of entrapment. Once the defense is placed into issue by some evidence, the prosecution has the burden of proving beyond reasonable doubt that the defense did not exist. *See* R.C.M. 916(b).

After weighing the evidence in the record, we are convinced beyond a reasonable doubt that appellant did commit the offense of distribution of cocaine on 29 December 1988. UCMJ art. 66(c), 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). We also conclude that the testimony of the appellant is sufficient to raise both elements of the defense of entrapment. *See United States v. Ferguson*, 15 M.J. 12 (C.M.A.1983) (citing *United States v. Tucker*, 38 C.M.R. 349 (C.M.A.1968)). Appellant claimed that the suggestion to commit the offense originated with SGT L, a government agent, and that he had no predisposition to commit the offense given his lack of prior involvement with drugs.

Accordingly, we must now determine whether the prosecution sustained its burden to prove beyond reasonable doubt that the defense did not exist. Once the defense is raised, the Government must prove that the appellant was predisposed to commit the offense and needed only the opportunity to commit the crime. In this case, it is appropriate that the issue be resolved by the fact finder. *See United States v. Vanzandt*, 14 M.J. 332 (C.M.A. 1982). The court in *Vanzandt* stated:

[T]he subjective test of entrapment involves balancing the accused's resistance to temptation against the amount of

government inducement. The focus is on the accused's latent predisposition to commit the crime, which is triggered by the government inducement. The existence of reasonable suspicion by the police is immaterial, so there is no occasion to offer or receive evidence establishing whether or why any suspicion existed. *United States v. Vanzandt*, 14 M.J. at 344.

In the case now before us, the trial defense counsel argued to the military judge, as the fact finder, that the appellant did distribute cocaine on 29 December, but that he should be acquitted based upon the entrapment defense.[1] The military judge was not requested to make special findings and no such findings appear in the record.[2]

In applying the subjective test in this case, we first note the following statement of the court in *Vanzandt*:

> The latitude given the Government in "inducing" the criminal act is considerably greater in contraband cases (drugs, liquor)—which are essentially "victimless" crimes—than would be permissible as to other crimes, where commission of the acts would bring injury to members of the public. It would appear that, in giving such latitude, courts recognize that the Government needs more leeway in detecting and combating these illicit enterprises.

*United States v. Vanzandt*, 14 M.J. at 344. Here, although appellant testified that SGT L approached him approximately ten times over a two-month period with requests to bring cocaine back to Fort Drum from New York City, appellant also stated that he just put SGT L off and said he would think about it. SGT L testified that when he asked appellant if he could "get some drugs for me," that appellant responded that he wasn't sure, he would let SGT L

know, and that he (appellant) used to sell drugs but that he had "retired" from that. Finally, when asked by his trial defense counsel why he finally decided to purchase the cocaine and then distribute it at Fort Drum, appellant referred to pressures of his job, his family problems (appellant's divorce was pending at the time), and his financial situation.

At the time of the offense, appellant had served more than eight years in the Army, was a staff sergeant, had been a noncommissioned officer more than three years, and was twenty-eight years old. SGT L, the government informant, was junior to appellant, and, according to the testimony of both appellant and SGT L, they were merely acquaintances, for they were neither friends nor did they work together. The record clearly establishes and appellant admits that, when the distribution took place, appellant bragged about the quality of the cocaine ("taste it, it's real good—it's the best in the city"), he stated there would be no problem supplying the buyer with cocaine on a regular basis, and he anticipated making at least $500.00 from the transaction. In addition, SGT L testified that appellant wanted him to sell drugs for appellant and was guaranteed at least $400.00 per week.

The establishment of a profit motive, in and of itself, does not establish the appellant's predisposition to commit the offense of distribution of cocaine. *United States v. Meyers*, 21 M.J. 1007 (A.C.M.R. 1986). In applying the balancing test enunciated in *Vanzandt*, however, it is one factor which may be considered along with the other evidence in the case. Even accepting without question the testimony of appellant, SGT L, the government infor-

---

1. Appellant was also charged with two other specifications of cocaine distribution, on 18 and 21 November 1988. The same informant, SGT L, testified that he purchased cocaine from appellant on those occasions. Appellant testified that he did not commit those offenses and was acquitted of those by the military judge.

2. Counsel at courts-martial are reminded that: In a trial by court-martial composed of military judge alone, the military judge *shall*

make special findings upon request by any party. Special findings may be requested only as to matters of fact reasonably in issue as to an offense and need be made only as to offenses of which the accused was found guilty. Special findings may be requested at any time before general findings are announced.

R.C.M. 918(b) (emphasis added).

mant, did not practice any form of deceit, nor did he engage in any egregious activity in attempts to overcome appellant's resistance to distribute cocaine. Appellant did not convey to the informant an outright refusal to engage in such activity, and when the opportunity arose and the circumstances were favorable, appellant freely and willingly purchased the cocaine, transported it to Fort Drum, and distributed it to a police undercover agent. We are convinced beyond a reasonable doubt that, although the suggestion to commit the offense originated with the government, the appellant was, in fact, predisposed to commit the offense.

## II

Appellant next asserts the following two related assignments of error:

THE CONVENING AUTHORITY WAS DISQUALIFIED FROM REVIEW OF APPELLANT'S SENTENCE.

and,

THE ACTING COMMANDER'S REVIEW OF APPELLANT'S SENTENCE WAS IMPROPERLY INFLUENCED BY THE CONVENING AUTHORITY'S INELASTIC ATTITUDE TOWARDS DRUG OFFENSES AS STATED IN THE CONVENING AUTHORITY'S ARTICLE IN THE *FORT DRUM SENTINEL*.

Major General (MG) Boylan was the convening authority for appellant's court-martial. Appellant was tried and convicted by the military judge on 15 February 1989. In the 16 March 1989 edition of the *Fort Drum Sentinel*, an editorial was published wherein MG Boylan expressed his opinions concerning the problem of drugs at Fort Drum.[3] From 16 April to 21 April 1989, Brigadier General (BG) Williford, Assistant Division Commander, Operations, 10th Mountain Division (Light Infantry), was the Acting Commander, 10th Mountain Division (Light Infantry) and Fort Drum. In his capacity as the acting convening authority, BG Williford took action on appellant's court-martial on 19 April 1989. He approved the sentence as adjudged.

Since the convening authority, MG Boylan, did not take action on appellant's court-martial, we need not address whether he was disqualified from reviewing appellant's sentence as a result of the newspaper article or of any opinions expressed therein. The issue before us is whether BG Williford, in taking action on the case, exercised his independent judgment in a fair and impartial manner despite the published opinions of MG Boylan.

■ A convening authority's post-trial duties are similar to those of a judicial officer. *United States v. Fernandez*, 24 M.J. 77 (C.M.A.1987). A convening authority must give each accused individualized, legally appropriate and careful review of his sentence. UCMJ art. 64, 10 U.S.C. § 864. A convening authority must review and show tangible proof that he has considered clemency matters prepared by the

3. The following is the entire text of the editorial:
*Help Needed to Rid Drum of Evil Scourge*
As commanding general of Fort Drum, I have the opportunity to influence much of what occurs here. It is also a sometimes uncomfortable fact that I can observe some occurrences which are very difficult to influence alone ... where I need help, particularly your help. This is one such case.
There is a slime that lives among us. It is a filth that is unspeakably sordid ... a filth that should be flushed to a bottomless abyss where it will rot in its own stench forever. I refer to those unspeakables among us who sell drugs and attempt to corrupt our society and, as importantly, our youth. These criminals have no place in a free society ... and should be removed from it.
To put this in perspective, why don't you ask a few questions and see what you think about the answers: Would you go to a brain surgeon who you knew to be a habitual user of amphetamines? Would you go to a dentist who is high on cocaine? How would you feel if your children's teacher habitually used marijuana? How would you feel about your son or daughter participating in a live-fire exercise, the leader of which was using crack?
Don't you feel that your expectations of performance by certain people require that they remain drug free? How about yourself, don't you feel you are important enough as a human being also to be drug free? I need your help to rid Fort Drum of this evil scourge. It can kill us.
PETER J. BOYLAN
Major General
Commanding

accused or defense counsel. *United States v. Craig,* 28 M.J. 321 (C.M.A.1989).

This court, in *United States v. Glidewell,* 19 M.J. 797 (A.C.M.R.1985), *aff'd,* 23 M.J. 153 (C.M.A.1986) (summary disposition), determined that, because a question existed as to the convening authority's impartiality with regard to the post-trial review function, his subordinate would also be disqualified from reviewing the case. The court stated in a footnote, however, that "[t]his concern does not automatically arise when an individual acts as a successor to an office." *Glidewell,* 19 M.J. at 800, note 2 (citation omitted). In *Glidewell,* there was no affidavit or other evidence before the court that would enable the court to "determine whether General [P], as General [A]'s subordinate, was disqualified from reviewing the case." *Id.* at 800. As a result, the court returned the record for a new review and action by a different convening authority.

■ On this issue, we have accepted and considered an affidavit from BG Williford (see appendix). We are satisfied, based upon the sworn assertions of BG Williford, that he considered all documents and matters submitted to him by appellant as well as the staff judge advocate's recommendation and addendum in making his decision to approve the sentence as adjudged. Further, we are convinced that the aforementioned newspaper article neither improperly influenced BG Williford nor affected his impartiality or ability to make an independent judgment. *But cf. Glidewell,* 19 M.J. 797.

Our decision should not convey a lack of concern either as to the published article or as to MG Boylan's ability to act as convening authority in courts-martial involving illicit drugs. That issue will be addressed when and if it is brought before us.

The findings of guilty and the sentence are affirmed.

Senior Judge MYERS and Judge JOHNSON concur.

APPENDIX

AFFIDAVIT

BEFORE ME, the undersigned authority, a commissioned officer on active duty with the United States Army, an authorized notarial authority, on this day personally appeared BRIGADIER GENERAL SHERMAN H. WILLIFORD, known to me to be the person whose name is subscribed to the following statement, who after being by me duly sworn upon his oath, deposes and states:

I, BRIGADIER GENERAL SHERMAN H. WILLIFORD, as Acting Commander, 10th Mountain Division (Light Infantry) and Fort Drum, took action in the case of *United States v. Cortes* on 19 April 1989. Before taking action I considered all documents and matters submitted by the defense. I also considered the staff judge advocate's recommendation and addendum in making my decision to approve the sentence as adjudged. The serious nature of the offense and the accused's rank of staff sergeant strongly influenced my decision.

The Division Commander's editorial in the post newspaper did not influence me, affect my impartiality, or my ability to take independent action in this case. My judgment alone as to what was an appropriate sentence in this case caused me to approve the sentence.

/s/ Sherman H. Williford
SHERMAN H. WILLIFORD
BRIGADIER GENERAL, USA
Assistant Division Commander, Operations

SUBSCRIBED AND SWORN TO BEFORE ME, a person authorized in accordance with 10 USC 936 to administer oaths and having a general power of a Notary Public of the United States this 28th day of April, 1989.

/s/ Donald Morgan

DONALD MORGAN

LTC, JA

Staff Judge Advocate