**UNITED STATES, Appellee**

v.

**Private First Class Mark L. GRIFFIN, 112–70–2517, United States Army, Appellant.**

**ARMY 9301793.**

U.S. Army Court of Criminal Appeals.

9 Dec. 1994.

---

608

For Appellant: Major Michael A. Egan, JAGC (argued); Captain Alison L. Becker, JAGC (on brief).

For Appellee: Captain Jinny Chun, JAGC (argued); Colonel John M. Smith, JAGC, Lieutenant Colonel James L. Pohl, JAGC, Major Lyle D. Jentzer, JAGC, Captain John W. O'Brien, JAGC (on brief).

Before LANE, JOHNSTON, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

RUSSELL, Judge:

A military judge sitting as a special court-martial found the appellant guilty, pursuant to his pleas, of failure to repair (two specifications), absence without leave (two specifications), wrongful appropriation of a motor vehicle, larceny of checks, forgery of twenty checks of a value of $620.00, and breaking restriction in violation of Articles 86, 121, 123, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 921, 923 and 934 (1988) [hereinafter UCMJ]. A panel of officers sentenced the appellant to a bad-conduct discharge, forfeiture of $500.00 pay per month for six months, confinement for six months, and reduction to Private E1. The convening authority reduced confinement to four months and approved the remainder of the adjudged sentence.

■■■■ This case is before the court for automatic review pursuant to Article 66, UCMJ. We have examined the record of trial, the assignment of error, and the government's reply thereto.[1] We find no error materially prejudicial to a substantial right of the appellant. Article 59, UCMJ. The defense asserts that the military judge had a sua sponte duty, despite defense counsel's decision to waive any objection, to ensure that no unlawful command influence affected the referral process. That assertion merits further discussion.

## I. Unlawful Command Influence

On 30 July 1993, the commander and general court-martial convening authority for the 101st Airborne Division (Air Assault) and Fort Campbell issued to subordinate commanders a lengthy memorandum concerning physical training, page five of which included the following language:

> There is no place in our Army for illegal drugs or for those who use them. This message should be transmitted clearly to our soldiers, and we must work hard to ensure that we identify drug users through random urinalysis and health and welfare inspections.[2]

1. At the invitation of the Professor of Law, United States Military Academy, and with the cooperation of the parties, the court heard oral argument in this case at West Point, New York, on 26 October 1994.

2. We note that, contrary to other cases involving unlawful command influence, this communication made no mention of the military justice system nor did it in any way purport to advise subordinates on how the system should be used. See United States v. Cortes, 29 M.J. 946 (A.C.M.R.), pet. denied, 31 M.J. 420 (C.M.A.1990); United States v. Toon, 48 C.M.R. 139 (A.C.M.R. 1973).

When he became aware of the letter, the staff judge advocate told the convening authority that the language "or for those who use them" tended to demonstrate an inflexible attitude toward criminal drug offenders that jeopardized his authority to act on courts-martial. Furthermore, he opined that it could be construed as unlawful command influence that would have a detrimental impact on subordinate commanders, court-martial panel members, and prospective witnesses. On 27 August 1993, acting on the advice of the staff judge advocate, the commander rescinded the original memorandum and issued a new memorandum that omitted the objectionable language.

## II. The Referral Process

On 2 September 1993, this case reached the convening authority for referral, with subordinate commanders recommending disposition at a special court-martial empowered to adjudge a bad-conduct discharge. At the time of referral, the case included a charge of wrongful use of cocaine in violation of Article 112a, UCMJ. The convening authority referred all charges as recommended by the chain of command. On 14 September 1993, the appellant and the convening authority entered into a pretrial agreement in which the convening authority agreed to limit confinement to four months in exchange for the appellant's plea of guilty to all charges and specifications.

At trial on 24 September 1993, the appellant pleaded guilty in accordance with his pretrial agreement. However, he reserved his right to fully litigate the issue of unlawful command influence prior to the military judge's accepting his pleas and entering findings. The military judge agreed to hear the motion to dismiss charges due to unlawful command influence on 13 October 1993.

In the meantime, taking further advantage of the government's potential legal vulnerability for any unlawful command influence or the appearance thereof, the appellant reentered negotiations in which the government gratuitously agreed to withdraw the drug charge and to amend the stipulation of fact to exclude all mention of the appellant's drug involvement.[3] In light of those beneficial concessions, the trial defense counsel decided that there was no legal basis to contest the issue of unlawful command influence insofar as it may have impacted the referral process. He summed up his assessment of the case as follows:

> [I]n this particular instance, with the number of crimes that were committed and the maximum punishments ..., the defense doesn't believe that the referral of these charges is really in any way affected by the drug use or the drug charge....

Describing the foregoing defense analysis as "exceptionally accurate," the military judge found that the appellant had a very cogent reason for not contesting the referral process inasmuch as the convening authority had conferred a substantial benefit by not referring the case to a general court-martial empowered to adjudge a much more severe sentence. Further detailed questioning by the military judge revealed that, in preparing to litigate the issue of unlawful command influence, neither counsel had discovered any evidence that the commander's memorandum had actually infected the referral, the selection of members, or chilled any potential witnesses.

We are satisfied that the government's complete capitulation regarding the drug charge eliminated any lingering appearance that the referral process was tainted by unlawful command influence. Where it is clear that the convening authority's remedial measures have eliminated even the appearance that unlawful influence may have impacted the case, the military judge has no duty to inquire beyond obtaining the defense counsel's assertion that he found no unlawful impact. Further, the military judge did not simply drop the issue with a general assurance from counsel, but rather took considerable time to cover various potential areas for harm.

■ We decline appellate defense counsel's invitation to adopt a rule that would

---

**3.** The appellant's trial defense counsel was appropriately zealous in taking full advantage of the convening authority's duty to mitigate even the appearance that his unartful memorandum might have resulted in a proceeding tainted by unlawful command influence.

require a military judge to undo the benefit to the accused of an excellent bargain exacted from the government by a highly competent trial defense counsel. There is simply no good reason to impose such a sua sponte duty on a military judge in a case such as this. Thus, we find that the appellant raised and affirmatively waived his objection to any unlawful command influence that theoretically may have affected the referral process.[4] Likewise, any disqualification of the convening authority on the ground that he was a de facto accuser was waived.

### III. The Trial

 When the trial resumed for sentencing, there were two ways remaining for any unlawful command influence to affect the trial: that the members had been unduly influenced by the general's memoranda, and that the convening authority might take post-trial action operating with an inflexible predisposition toward drug offenders. The military judge eliminated these potentialities[5] by relaxing the rules on challenging members, allowing a full and open voir dire of the members regarding any impact the memorandum might have had, and by ruling "as an abundance of caution and to cure any appearance" of unlawful command influence that the commanding general was disqualified from taking any post-trial action.

 Unlawful command influence at the trial or review stage is not waived by failure to raise the issue at trial. *See generally United States v. Blaylock,* 15 M.J. 190, 193 (C.M.A.1983). Accordingly, we have reviewed the record for unlawful command influence and are satisfied beyond a reasonable doubt that no Article 37, UCMJ, violation occurred. *United States v. Thomas,* 22 M.J. 388, 394 (C.M.A.1986); *United States v. Johnston,* 39 M.J. 242, 244 (C.M.A.1994); *Hamilton,* 41 M.J. at 33.

The commendable pretrial prophylactic measures taken by the convening authority, and the military judge's astute handling of the issue at trial, have ensured the appellant a fair trial. The overall integrity of the military justice process was preserved.

The findings of guilty and the sentence are affirmed.

Senior Judge LANE and Judge JOHNSTON concur.

---

**4.** For an excellent survey of "unlawful command influence" issues during the referral stage, see *United States v. Hamilton,* 41 M.J. 32 (C.M.A. 1994).

**5.** The appellant had the tactical choice of proceeding on sentencing with the assurance that his drug use would not even be mentioned by the government in aggravation. However, the appellant reasonably decided, nevertheless, to bring his drug involvement to the members' attention in a tactical effort to portray himself as a basically good soldier who strayed due to episodal drug use, but who could be rehabilitated for military service.