UNITED STATES, Appellee

v

WALTER MAMALUY, Airman, U. S. Navy, Appellant

10 USCMA 102, 27 CMR 176

No. 11,481

Decided January 9, 1959

*Lieutenant (jg) Joseph A. Califano, Jr.*, USNR, argued the cause for Appellant, Accused. With him on the brief were *Commander John P. Gibbons*, USN, and *Major R. D. Humphreys*, USMC.

*Commander Benjamin H. Berry*, USN, argued the cause for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused in the case at bar pleaded guilty to several specifications alleging violations of the Uniform Code of Military Justice. The situs of the crimes was Honolulu, Territory of Hawaii. He was sentenced to a bad-conduct discharge, confinement at hard labor for five years, total forfeitures, and reduction to the grade of airman recruit. We granted his petition for review to determine three issues. The first assigned error involves a consideration of whether a specification alleging self-injury states an offense. The second raises a question of whether the instructions given by the law officer in regard to the factors to be considered in assessing the sentence were inappropriate and prejudicial to the rights of the accused. Whether the references to other records of trial in the staff legal officer's review prejudiced this accused is the third question to be resolved. We shall treat them in the order stated.

## II

The specification involved in the first issue is worded as follows:

"In that Walter (n) Mamaluy, airman, U. S. Navy, Air Transport Squadron Seven, Hickam Air Force Base, Honolulu, Territory of Hawaii, did, on board Hickam Air Force Base, Honolulu, Territory of Hawaii, on or about 1955 hours, 5 March

1957, for the purpose of avoiding confinement in the U. S. Naval Base Brig, Marine Barracks, U. S. Naval Base, Pearl Harbor, Honolulu, Territory of Hawaii, intentionally injure himself by cutting his left wrist with a razor blade."

A few general observations might be appropriate before we discuss the specific allegations of the charge. In United States v Sell, 3 USCMA 202, 11 CMR 202, we stated the test to determine the sufficiency of a specification to allege an offense. There we said:

". . . The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiency apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Furthermore, when the pleadings have not been attacked prior to findings and sentence, it is enough to withstand a broadside charge that they do not state an offense, if the necessary facts appear in any form or by fair construction can be found within the terms of the specification."

See also United States v Reams, 9 USCMA 696, 26 CMR 476; United States v Petree, 8 USCMA 9, 23 CMR 233.

Here the accused entered a plea of guilty to the offense alleged and in no manner raised any objection to the sufficiency of the pleadings. Under those circumstances, the questioned specification is insufficient to withstand his charge that it does not state an offense if the necessary facts are stated in any form or by fair construction can be found within the language of the specification. At this stage of the proceedings it is not enough for the accused to establish that the charge is inartfully or loosely drawn. He must show it is lacking in one or more of the essential elements of the offense.

This particular crime was alleged under Article 115, Uniform Code of Military Justice, 10 USC § 915, which, insofar as relevant, provides:

"Any person subject to this chapter who for the purpose of avoiding work, duty, or service—

. . . . . .

(2) intentionally inflicts self injury;
shall be punished as a court-martial may direct."

A careful analysis of the specification discloses that it pleads facts sufficient to allege all the elements of ▇▇▇▇▇▇ ▇ the offense with the possible exception that the injury was inflicted to avoid work, duty, or service. It is this element of the offense which accused contends is not expressly or by fair implication found within the phrase "for the purpose of avoiding confinement in the U. S. Naval Base Brig." Thus, the question narrows to whether the last quoted language brings the accused's conduct within the coverage of Article 115, supra.

The words "work," "duty," or "service" are not restricted to one context or sense. Without straining their ordinary meaning, the breadth of these terms would seem to cover all aspects of a serviceman's official existence.

Unquestionably, what the law intended to proscribe was a self-inflicted injury which would prevent the injured party from being available for the performance of all military tasks. Loosely speaking, confinement in the brig may be the antithesis of military service, but a person apprehended for an offense has a duty to go there and remain until released by proper authority. In addition, while therein confined he has certain work, duty, or services to perform, and he is subject to military orders. If by injuring himself he forces the Government to confine him in a hospital, he has breached his obligation to the service and successfully escaped the performance of many military duties assigned, even if he is an unsentenced prisoner. While pretrial confinement is an early step in a criminal proceeding against a suspect, those who are incarcerated do not forfeit their pay and allowances and the Government is entitled to have them physically qualified to work within the compounds or at other designated places. Moreover, an injury which would prevent a suspect's incarceration might be so disabling that the offender would be unfit for service if he was thereafter returned to duty. We, therefore, conclude that when a specification states a purpose to avoid either escape being confined, it, by fair implication, states a purpose to avoid either work, duty, or service. Obviously, we express no opinion as to whether the accused might have been entitled to have the specification made more definite and certain had he filed an appropriate motion for relief. He did not do so and since the instant specification, as worded, is adequate to protect him from any further prosecution for his self-inflicted injury, the accused cannot prevail in his first assignment of error.

III

The second error assigned presents more difficulty. It attacks the instructions given by the law officer on sentence, which we will hereinafter quote and which are excerpts from a full and exhaustive charge to the court-martial members. It must be recalled that the court was being advised on what matters it might consider in a

case in which the accused had pleaded guilty to the following offenses: Intentionally injuring himself to avoid service; three larcenies of valuable personal property belonging to residents of Honolulu; and three nighttime burglaries of civilian residences in the vicinity and two housebreakings. The property stolen consisted of furniture, musical instruments, wearing apparel, and cash, totaling in value some $800, and the houses entered were all occupied. Each offense was separate, and the accused could have been sentenced to a dishonorable discharge, forfeiture of all pay and allowances, and confinement for sixty-two years.

The law officer commenced his charge by stating that the determination of the proper punishment for the offenses alleged and to which the accused had pleaded guilty was solely within the discretion of the court, subject to the limitations which he would state. He then advised the court on the maximum punishment authorized for each of the offenses involved, but he cautioned the members that normally it was to be reserved for an offense which was aggravated by the circumstances surrounding its commission. In his enumeration of the factors which the court might consider, the law officer mentioned the value of the property stolen, any aggravating circumstances which were shown by the record, and the mitigating and extenuating evidence produced by the accused, including his background, his education, his early training, the character of his service, and the fact that he had entered a plea of guilty which saved the Government considerable time and expense. It was when his instructions left the confines of the record that the law officer's charge became doubtful, confusing, and, for the most part, of no value to the court. We quote the questionable part of the charge he gave:

"Among other factors, the penalties which are adjudged in other cases for similar offenses. With due regard to the nature and seriousness of the circumstances attending each and in the particular case, sentences should still be relatively uniform throughout the armed forces. In special circumstances to meet the needs of local conditions, sentences more severe than those normally adjudged for similar offenses may be necessary. Courts will however, you in this instance, will exercise their own discretion and will not adjudge a sentence which you consider excessive upon the expectations that the Reviewing Authority will reduce it as a mitigating capacity. Imposition by courts of inadequate sentences upon persons in the military convicted of crimes which are punishable by civil courts, tends to bring the military forces into disrepute as lacking in respect for the criminal laws of the community wherein the court is sitting."

In concluding his instructions, he made the following comment:

"Now none of the instructions or information which I have set forth here as pertaining to your sentence should be construed as indicating a specific sentence for you to give as I have indicated that is solely your perrogative [sic]. It is a discretionary matter with you."

After completion of his charge, the law officer asked if there were any objections by either counsel to the instructions or whether there were requests for additional remarks. A sidebar conference was held, and the law officer further advised the court regarding the lowest enlisted grade to which the accused could be reduced. Counsel for both parties notified the law officer they had no objections and no further requests were submitted.

The quoted instructions here in question find their root in paragraph 76a of the Manual for Courts-Martial, United States, 1951, and if they have any value—which we doubt—it would only be under unusual circumstances or to subsequent reviewing authorities who have some opportunity to seek out information on uniformity. It must be acknowledged that these matters have long been considered by military courts over many years and we have examined them at the trial level under somewhat different circumstances. In the recent

case of United States v Cummins, 9 USCMA 669, 26 CMR 449, trial counsel, in arguing to the court, founded his argument on the principles enunciated by the law officer in this instance. In that case, we held that it was legitimate argument to mention the factors included in this charge and that that accused was not prejudiced thereby. That case is not authority for the proposition that the law officer may use the same ingredients in charging the court, but it does suggest they are not so inflammatory or so unfair that prejudice is present merely because the court members are informed of their existence.

We are mindful of the fact that the court-martial must take its law on findings and sentence from the law officer and that he should be permitted to give general guides governing the matters to be considered in determining the appropriateness of the particular sentence. However, we believe the quoted factors used by this law officer are impractical, confusing, and of such doubtful validity they should not be given to the court-martial members. To begin with, we have a great deal of difficulty in ascertaining how they can be applied practically. By way of illustration, one of the yardsticks mentioned is the penalties adjudged in other cases for similar offenses. It seems to us such a measuring rod fails to take into account the peculiarities of the military practice. In this instance, we have some nine specifications alleging numerous types of offenses all consolidated for the purpose of sentence. It would be almost impossible for members of the court-martial to remember or find a similar case of consolidation or nine offenses which resemble those alleged in these specifications. Moreover, it has long been the rule of law that the sentences in other cases cannot be given to court-martial members for comparative purposes. Aside from keeping the court from becoming involved in collateral issues, that principle is founded on the hypothesis that accused persons are not robots to be sentenced by fixed formulae but rather, they are offenders who should be given individualized consideration on punishment. How then, we ask, would a court apply that portion of the instruction without knowing the evidence before the courts-martial which heard the other cases? Military courts have little continuity, and confusion would result if they sought to equalize sentences without being informed fully.

By way of further discussion, it is to be noted this court-martial was told in substance that if it found special circumstances to meet the needs of local conditions, sentences more severe than those normally adjudged for similar offenses might be necessary. What we have previously stated applies with equal force to this factor but, in addition, the special circumstances are not identified. In other words, the court was left on its own to estimate whether, because of some local problem or other, additional punishment should be dealt this accused. That leaves the court largely unguided in a critical area. Moreover, neither the accused, the law officer, nor reviewing authorities ever will know if the sentence of the court was based on relevant factors. This is patently not the intended application of paragraph 76a(4) of the Manual, supra.

Finally, we find much to be said against the admonition that the imposition by courts-martial of inadequate sentences upon military persons convicted of crimes which are punishable by the civilian courts tends to bring the armed forces into disrepute. It can be said that if a military command let murderers, rapists, burglars, and robbers escape adequate punishment, the service involved might be considered as a haven for gangsters. Undoubtedly that would bring it into disrepute, but how, we inquire, in a given case could the court fit that concept into its formula for appropriateness? Would it arrive at a sentence and then proceed to measure it by the local desires? If so, the yardstick would be too elastic, for scales of punishment vary the world over. And we wonder how the evidence, if obtainable at all, would be presented to the court-martial.

There is no real value in reciting generalities to courts-martial. They

should operate on facts, and instructions should be tailored to fit the particular record. Obviously, the difficulty with these instructions is that they pose theories which are not supported by testimony and which operate as a one-way street against the accused. They have an overtone of severity against him which he cannot possibly rebut by any reasonable means. In summation, proper punishment should be determined on the basis of the nature and seriousness of the offense and the character of the offender, not on many variables not susceptible of proof.

The arguments we set out above demonstrate that the instructional pattern provided by paragraph 76 of the Manual ought to be discarded and instructions of more utility substituted therefor. As a general proposition, they may not be unsound, and we have previously considered them in that light but, when beamed at a particular case in which the court-martial might try to apply them, there is some risk the court may veer away from its primary task of assessing a sentence appropriate to the person on trial. It is worth noting that we are dealing with imponderables which have no bearing on findings of guilt, and it is conceivable that subjectively court-martial members as well as civilian judges might properly give some consideration to the subjects mentioned, but objectively they should be of little moment and they should not be given the importance they naturally carry when given in instructional form. In the case at bar, it can be argued that, because citizens of Honolulu were the victims, the court-martial ▌considered local conditions as a factor in assessing sentence. Furthermore, it is asserted that a heavy penalty might have been imposed to keep the service free from disrepute in that locality. However, it seems to us that the answer to those contentions can be found in the sentence assessed, for certainly it appears that the court members were not influenced to return an inappropriate sentence. The accused had broken into the homes and stolen from a number of civilians, and his crimes would subject him to confinement for sixty-two years.

After entering a plea of guilty, he made a valiant effort to reduce his punishment, and he had considerable success. His sentence was less than one-twelfth of the maximum and by any standard this record reflects the punishment was reasonable and fair without reference to any extraneous considerations. In measuring the prejudice of an instructional error, we must of necessity determine whether there is a fair risk that the court was influenced adversely against the accused and, if there is doubt in our minds, we resolve the uncertainty in his favor. Here the court members were informed they had absolute discretion to impose what they believed to be an appropriate sentence and that they were not to accept any instruction as indicating specificity with respect to sentence. Accordingly, when the instructions are interpreted as a whole and the number and seriousness of the offenses are given due consideration, the erroneous portion of the instructions loses significance. Furthermore, a board of review made a subsequent and independent appraisal of the sentence and found it to be fair and appropriate in all respects. We, therefore, conclude the instructional error was harmless.

IV

We come then to the third and final question, which relates to that portion of the review written by the staff legal officer in which he recommended affirming the sentence:

"9. *RECOMMENDED ACTION:* Mamaluy, the accused in this case, was one of six accuseds [sic] tried in companion cases, the other accuseds being Harry B. O'Neal, Donald H. Earnest, Michael J. Pearce, Elmer A. Rolof, and Ronald E. Smith. A reading of these cases together with their allied papers, indicates that the accused Mamaluy was the instigator and ring leader of this group. For this reason, coupled with the seriousness of the offenses involved, it is recommended that the sentence adjudged by the court be approved."

The observation that the accused was

the instigator and leader of the group was obviously derogatory ■ to him, and it would have been the better practice to have furnished him a copy of the report for reply if he deemed the comment unwarranted. Had the information been obtained from other sources and not known to the accused, there would be a fair risk of prejudice. However, this record shows there was a thorough and complete pretrial hearing in which the individuals mentioned by the reviewer all participated. They were represented by counsel, and a great deal of incriminating evidence was developed. Statements were taken from some thirty-odd individuals, including the six parties under charges. Copies of all statements were furnished to them, and they would be found in all records of trials of the other offenders. From these it is glaringly apparent this accused was the ringleader. At this pretrial hearing, he was charged with some twenty offenses. A number of these were committed by him alone, while the remainder were in conjunction with some of the other offenders. But only one of his associates was involved in as many as five crimes while the remaining offenders had no more than three charges placed against them. Although his associates in crime varied, his method of operation formed a well-defined pattern. He either led the pack on the breaking and entering, or he was well forward. He usually distributed the loot or its proceeds. His car and apartment were helpful aids, and he was the principal vendor of the property. All of this information is found in the record of the pretrial hearing, and accused was well aware of the fact that some of his co-actors charged him with being the instigator of the crimes. While admittedly certain charges were dropped prior to trial because of accused's offer to plead guilty and the difficulty incident to producing witnesses, the pretrial evidence shows a course of conduct from which any reasonable person would conclude that the accused was playing the role of the principal actor. Undoubtedly, the records of trial of all offenders were reviewed by both the staff judge advocate

and the convening authority, and while the legal officer referred to them he did not mention matters not readily available in the present file. Accordingly, the real vice, if any, in this case would find its source in the bare possibility that the reviewer was relying on evidence which might be false and which the accused might rebut. The record, however, dispels any contention of that nature, for it appears clearly he was painfully aware of the fact of his leadership which was disclosed at the pretrial hearing. His plea of guilty admits his complicity, and his confession and pretrial efforts in locating some of the missing property add weight to the other evidence which supports the staff legal officer's opinion that he was the moving party. When we give consideration to the source and weight of the testimony forming the base for the reviewer's conclusion, we are convinced the accused could not reasonably hope to challenge the view expressed. Certainly up to this date he has not come forward with as much as a suggestion that he desired an opportunity to do so.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs in the result.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur with the principal opinion's disposition of the first issue.

However, I dissent on the disposition of the second issue. As the majority opinion notes, the law officer's instructions, were erroneous. However, it finds no prejudice because of the leniency of the sentence. It concludes:

"There is no real value in reciting generalities to courts-martial. They should operate on facts, and instructions should be tailored to fit the particular record. Obviously, the difficulty with these instructions is that they pose theories which are not supported by testimony and which operate as a one-way street against the accused. They have an overtone of severity against him which he can-

108

not possibly rebut by any reasonable means."

I stated my view in United States v Horowitz, 10 USCMA 120, 27 CMR 194, that this Court may not properly hold that what we say as judges is a light sentence may reach back in time to cure an erroneous instruction. I also said in the same case, "Had a correct instruction been given, there is no way of ascertaining what sentence the court-martial might have adjudged."

I also dissent as to the disposition of the third issue. The pertinent portion of the staff legal officer's review is as follows:

"9. *RECOMMENDED ACTION:* Mamaluy, the accused in this case, was one of six accuseds [sic] tried in companion cases, the other accuseds being Harry B. O'Neal, Donald H. Earnest, Michael J. Pearce, Elmer A. Rolof, and Ronald E. Smith. *A reading of these cases together with their allied papers,* indicates that the accused Mamaluy was the instigator and ringleader of this group. For this reason, coupled with the seriousness of the offenses involved, it is recommended that the sentence adjudged by the court be approved." [Emphasis supplied.]

Obviously, the staff legal officer's conclusion that the accused was the ringleader was not gleaned from an examination of the record in this case alone. We have frequently held it constitutes prejudicial error for the staff legal officer to include in his review and/or the convening authority to consider matters from outside the record adverse to the accused without affording him an opportunity to rebut or explain such matters. See United States v Griffin, 8 USCMA 206, 24 CMR 16; United States v Vara, 8 USCMA 651, 25 CMR 155; United States v Wilson, 9 USCMA 223, 26 CMR 3; United States v Morris, 9 USCMA 368, 26 CMR 148.