## UNITED STATES, Appellee

v

## FORREST B. JOHNSON, II, Storekeeper Third Class, U. S. Navy, Appellant

### 14 USCMA 548, 34 CMR 328

No. 17,295

May 22, 1964

*Lieutenant Colonel John R. DeBarr,* USMC, argued the cause for Appellant, Accused.

*Major J. M. Detrio,* USMCR, argued the cause for Appellee, United States.

## Opinion of the Court

QUINN, Chief Judge:

This appeal concerns the effect of "Additional Instructions for Court Members" issued before trial by the staff legal officer of the convening authority to members of the court-martial that tried the accused. At trial, defense counsel moved for a change of venue or for a mistrial because of alleged improper matter in the instructions. A great deal of the pamphlet is within the scope of permissible orientation of prospective court members to acquaint them with the nature and importance of a court-martial and their individual responsibilities. See United States v Davis, 12 USCMA 576, 31 CMR 162. However, several important parts of the pamphlet have been condemned by two separate boards of review for being contrary to decisions of this Court.[1] United States v Raynor, NCM 63–00852, decided August 5, 1963; United States v Ashley, NCM 63–01093, decided November 18, 1963.

The Government specifically concedes that "portions" of the pamphlet leave "room for improvement," and impliedly concedes that the condemnation of those parts of the pamphlet by the boards of review was justified. However, it contends that the court members in this

---

[1] One of the provisions of the pamphlet most strongly criticized is an instruction to the prospective court members to consider that "the convening authority, in referring the case for trial by general court-martial, has considered the policy that a case should be referred for trial by the lowest court having the power to adjudge an appropriate and adequate sentence." See United States v Wood, 13 USCMA 217, 222, 32 CMR 217. The pamphlet also referred the reader to paragraph 76, Manual for Courts-Martial, United States, 1951, for factors "which may be considered in determining an appropriate sentence." Speaking of the uselessness of these factors, we said: "[T]hey pose theories which are not supported by testimony and which operate as a one-way street against the ac-

cused"; we suggested that "the instructional pattern provided by paragraph 76 of the Manual ought to be discarded." United States v Mamaluy, 10 USCMA 102, 107, 27 CMR 176. In addition, we may question the wisdom, or the purpose, of requiring members of a general court-martial to become "familiar" with the Manual for Courts-Martial, the Uniform Code of Military Justice, and a designated Judge Advocate General Manual, while admonishing them that during trial the law officer's instructions "are to be . . . [the] *only* source of law." See United States v Rinehart, 8 USCMA 402, 24 CMR 212; United States v Linder, 6 USCMA 669, 674, 20 CMR 385; cf. United States v Navarre, 5 USCMA 32, 37, 17 CMR 32.

550

case were not influenced adversely to the accused and, therefore, he was not deprived of a fair trial. This was the view taken by the majority of the board of review below.

Pretrial orientation of court members is authorized by the Manual for Courts-Martial, and has a worthwhile place in the court-martial system as a means of "general [or broad] orientation on the operation of the court-martial procedures and the responsibilities of court members." United States v Davis, supra, at page 581; see also United States v Marshall, 12 USCMA 117, 122, 30 CMR 117. The number of cases that have been brought to this Court to challenge the "command control" aspects of pamphlets and lectures presented to court members before trial suggests, however, that too many lecturers and pamphleteers allow their zeal to carry them into a discussion of matters that are of no concern to a court-martial. See United States v Kitchens, 12 USCMA 589, 31 CMR 175. When this happens, appellate review of the merits is burdened by the necessity of determining the effect of these extraneous and wholly unnecessary comments.

In approaching a problem of this nature, the apparent existence of "command control," through the medium of pretrial communication with court members, is as much to be condemned as its actual existence. As a matter of principle, any doubt in the matter must be resolved in favor of the accused. United States v Kitchens, supra; see also United States v Mamaluy, 10 USCMA 102, 107, 27 CMR 176. We have no hesitancy in joining the boards of review in their conclusion that the pamphlet in this case exceeded the limits of permissible pretrial guidance, and set out erroneous statements which could reasonably influence the court members against the accused. However, the injection of improper matter into a case, which is capable of influencing the deliberations of a court member, does not disqualify the court member *eo instanti*, and deprive the court-martial of power to proceed further with the case. United States v Ferguson, 5 USCMA 68, 17 CMR 68; United States v Guest, 3 USCMA 147, 11 CMR 147. The appearance, or the existence, of command influence provides a presumption of prejudice; but the presumption is rebuttable. Consequently, if the record of trial demonstrates that the court members completely disregarded the improper matter, there is no reason to conclude that the accused was deprived of a fair trial. United States v Wood, 13 USCMA 217, 222, 32 CMR 217. It was on this basis that the board of review below affirmed the accused's conviction, but reversed the conviction in the *Ashley* case, supra. We disagree with the board of review's conclusion that this record of trial demonstrates the accused was not prejudiced as to the sentence.

The accused was charged with two specifications of larceny, an unauthorized absence of one week, wrongful disposition of military property, three specifications of forging interim receipts, and bigamy, in violation of Articles 121, 86, 108, 123, and 134, Uniform Code of Military Justice, 10 USC §§ 921, 886, 908, 923, and 934, respectively. He enterd a plea of guilty to all charges. The voluntariness of the plea is apparent from the record of the out-of-court hearing conducted by the law officer, and it is not disputed on this appeal. The plea, therefore, eliminates the remotest possibility that anything in the pamphlet influenced the court-martial against the accused in regard to the findings of guilty. See United States v McBride, 6 USCMA 430, 20 CMR 146; United States v Schalck, 14 USCMA 371, 34 CMR 151. The remaining question is whether it is equally clear that the court members were unaffected in their deliberations on the sentence. United States v Kitchens, supra.

In searching the record of trial to determine whether it overcomes the presumption of prejudice arising from the exposure of court members to improper material relating to

the case, we may look to the determination actually made by the court. In this area, action can, indeed, speak louder than words. A court member's oral assurance that he will not be influenced by extraneous information known to him, may not be sufficient to overcome the presumption. United States v Olson, 11 USCMA 286, 29 CMR 102; United States v Dean, 5 USCMA 44, 52, 17 CMR 44. But, the determination made by the court-martial may show affirmatively and incontrovertibly that the improper matter did not harm the accused. To cite an extreme example, we may refer to the situation presented in United States v Littrice, 3 USCMA 487, 13 CMR 43. There, the court members were subjected to an orientation lecture immediately before trial which, among other things, stressed a command policy to eliminate thieves from the service. We held that it could reasonably be expected that this lecture influenced the court members against the accused, who appeared before them on three charges of larceny. Had the accused been acquitted, obviously, he could not have been harmed by the lecture, even if it had been motivated by a deliberate design to effect his separation from the service. Actions less complete than full acquittal may be similarly indicative of the fact that the court-martial was not "oriented disfavorably against [the] accused." United States v Davis, 12 USCMA 576, 580, 31 CMR 162.

In the *Davis* case, the accused was charged with three specifications of forgery, one specification of dishonorable failure to pay a debt, and two specifications of a false official statement. Before trial, the court members attended a lecture on military justice given by the convening authority and the staff judge advocate. In reviewing the record to assess the effect of this lecture on the court-martial, we took cognizance of the fact that the accused was acquitted of three of the major offenses charged. We also noted that the sentence was markedly light in relation to the maximum punishment to which the accused was subject. These circumstances weighed heavily against the presumption that improper statements

in the pretrial lecture influenced the court against the accused. What is a lenient sentence is not easy to decide.

In *Mamaluy,* supra, the accused pleaded guilty to offenses which authorized a maximum punishment extending to confinement at hard labor for sixty-two years. He received a sentence of a bad-conduct discharge and confinement at hard labor for six years. The disparity between the actual sentence imposed and the permissible maximum played an important part in this Court's conclusion that the court-martial was not influenced by erroneous instructions on sentence considerations which parallel some of the objectionable statements in the pamphlet in issue in this case. Yet, the difference between the sentence imposed and the maximum for the offenses found is not the only factor to be considered in determining the effect of command comments to the court members before trial.

All the circumstances presented by the record of trial must be considered before a particular sentence can properly be characterized as lenient. In the *Kitchens* case, supra, the accused entered a plea of guilty to two specifications of larceny and one specification of housebreaking, which subjected him to a punishment including a dishonorable discharge and confinement at hard labor for fifteen years. The court-martial adjudged a sentence which included only a bad-conduct discharge and total forfeiture of pay and allowances. The record of trial showed the accused had been previously tried by a civil court for the same acts, and that he was placed on probation. The accused's commanding officer and the Article 32 investigating officer recommended administrative disposition of the military charges. All the offenses were committed in a single escapade, under circumstances which led the military and civilian police to describe the affair as a "foolish thing." It further appeared that the property had been restored to the owner, and he was being reimbursed for all damage. Considering all the evidence, it was apparent that, although relatively light in relation to the maximum punishment to which the accused

was subject, the adjudged sentence was not lenient. We could not say "with any degree of assurance" that the court-martial was not influenced by command letters to which it had been exposed before trial. United States v Kitchens, 12 USCMA 589, 591, 594, 31 CMR 175.

Here, the maximum punishment to which the accused was subject included a dishonorable discharge █ and confinement at hard labor for thirty-two and one-half years. The Government maintains that since the adjudged sentence, which includes a bad-conduct discharge, confinement at hard labor for three years, total forfeiture of pay and allowances, and reduction to grade E-1, is so small compared to the maximum punishment that the court-martial was manifestly unmoved by the matter in the guidance pamphlet given to it before trial. As in *Kitchens*, however, much of the evidence presented in mitigation in this case militates against the Government's position. In addition, the convening authority's willingness before trial to agree to disapprove any sentence in excess of a bad-conduct discharge, reduction in grade, *partial* forfeiture of pay, and confinement at hard labor for *twelve months* indicates that the adjudged sentence is hardly compassionate. On the contrary, the court-martial sentence *is three times as severe* as that which the convening authority believed to be appropriate. Under the circumstances, we cannot say with conviction that the court-martial was uninfluenced by the pamphlet in its deliberation on the sentence.

The decision of the board of review as to the sentence is reversed. A rehearing thereon may be ordered.

Judge KILDAY concurs.

Judge FERGUSON concurs in the result.