**UNITED STATES, Appellee,**

v.

**Private (E-1) Kenneth ANDERSON, 335–56–1213, United States Army, Appellant.**

**CM 443474.**

U.S. Army Court of Military Review.

24 Dec. 1985.

---

**4.** *See infra* Note 1.

For Appellant: Lieutenant Colonel William P. Heaston, JAGC, Lieutenant Colonel Arthur L. Hunt, JAGC, Major Lawrence F. Klar, JAGC, Major Stephen R. Dooley, JAGC, Captain William T. Wilson, JAGC, Captain Robert W. Wiechering, JAGC, Captain Paul E. Conrad, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, Major Patrick M. Flachs, JAGC, Captain Samuel J. Rob, JAGC, Captain Daniel N. Velling, JAGC (on brief).

Before WOLD, FELDER and NAUGHTON Appellate Military Judges

## OPINION OF THE COURT ON REMAND

WOLD, Senior Judge:

Contrary to his pleas, appellant was convicted on 7 September 1982, by a military judge sitting as a general court-martial, of larceny (two specifications) and assault and battery, violations of Articles 121 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 928 (1982), respectively. Appellant was sentenced to a dishonorable discharge, confinement at hard labor for three years and six months, forfeiture of all pay and allowances, and reduction to the grade of Private E–1. Upon the request of Major General Thurman E. Anderson, Commander, 3d Armored Division, the Commander, V Corps, took action in appellant's case after General Anderson disqualified himself from acting in the case because he had granted immunity to a government witness and ordered him to testify at appellant's trial. The Commander, V Corps, approved the sentence. In *United States v. Anderson*, CM 443474 (A.C.M.R. 31 Mar.1983) (unpub.), this court affirmed the findings

and sentence in appellant's case. The United States Court of Military Appeals then denied appellant's petition for grant of review. *United States v. Anderson,* 17 M.J. 287 (C.M.A.1984). Appellant next petitioned the Court of Military Appeals for reconsideration of its denial of his petition and for the first time requested relief based on alleged unlawful command influence. The Court of Military Appeals granted appellant's petition for reconsideration and remanded the case to this court for further review. *United States v. Anderson,* 18 M.J. 17 (C.M.A.1984).

I

■ Appellant contends that General Anderson exerted unlawful command influence and that General Anderson was disqualified from referring the charges to trial because of his lack of judiciousness and his personal interest in the findings and sentences of soldiers tried by court-martial in the 3d Armored Division. More particularly, appellant asserts that he was denied a potential defense based on good character and that he was denied extenuation and mitigation testimony by unlawful command influence or the perception of unlawful command influence resulting from the actions of General Anderson. We are satisfied that General Anderson was not disqualified to refer appellant's case to trial. *See United States v. Treakle,* 18 M.J. 646, 654–55 (A.C.M.R.1984) (en banc), *pet. granted,* 20 M.J. 131 (C.M.A.1985). The basic questions before us are whether appellant suffered substantial prejudice as a result of being deprived of favorable character evidence on findings or sentence and whether there will exist an appearance that he was. The resolution of these matters is controlled by *United States v. Cruz,* 20 M.J. 873 (A.C.M.R.1985) (en banc), and other relevant precedents.

II

General Anderson assumed command of the 3d Armored Division on 19 February 1982. On 13 April 1982 he began a series of command lectures at which he addressed a variety of subjects, including military justice. His comments on military justice were interpreted by some in his audience as indicating that he did not want them to give favorable character testimony for accused soldiers.[1]

During the merits phase of this trial, appellant denied any involvement in the charged offenses. Appellant's girlfriend also testified on his behalf and attempted to provide him with an alibi for one of the larceny charges. In rebuttal, the government called appellant's company commander, who testified concerning appellant's character for truthfulness. The company commander's opinion of appellant was that "he is a liar," although the commander later stated that he would "probably" believe appellant under oath. The military judge, in the course of ruling on an objection to the company commander's testimony, remarked that "[t]he accused's character for truthfulness is a central issue in this case." During the sentencing proceedings, appellant's sole evidence in extenuation and mitigation consisted of a brief sworn statement which indicated that he had a three-year-old-daughter living with his mother, to whom he was sending $200.00 per month.

Under the facts of the case at bar, character evidence would certainly have been relevant to support the credibility of appellant's testimony on the merits, since the government directly attacked appellant's character for truthfulness. *See* Mil.R. Evid. 404 and 608. In addition, evidence of any "pertinent trait" of appellant's character would also have been admissible on the merits, *see* Mil.R.Evid. 404(a)(1), and character evidence would have been admissible

---

1. *See United States v. Treakle, supra,* and *United States v. Yslava,* 18 M.J. 670 (A.C.M.R.1984) (en banc), *pet. granted,* 19 M.J. 281 (C.M.A.1985), for a detailed discussion of the evidence relating to unlawful command influence in the 3d Armored Division during the time General Anderson was in command.

during the sentencing proceedings, *see* Rule for Courts-Martial 1001(c).

The record is silent as to the reason for the absence of favorable character witnesses for appellant. To support his contention that he was deprived of favorable character witnesses by the actions of General Anderson, appellant has presented us with the evidence concerning the general situation in the 3d Armored Division which this court considered in its decisions in *United States v. Treakle* and *United States v. Yslava, supra.* We have also considered additional circumstantial evidence in the form of affidavits from Colonel John R. Bozeman, Lieutenant Colonel Mark A. Mueller, and Major Michael A. Buchanan which were not available at the time of those decisions.[2] We have no other evidence from which to determine the merit of appellant's request for relief.

### III

■ In *United States v. Cruz*, 20 M.J. 873 (A.C.M.R.1985) (en banc), we noted the general proposition that the proceedings of a court-martial are entitled to a rebuttable presumption of correctness and regularity. 20 M.J. at 884–85. In order for any appellant to neutralize this presumption, he must "produce sufficient evidence of an error affecting the validity of the findings or sentence in his case to shift the burden of persuasion to the government." *Id.* at 885. Where the alleged error is unlawful command influence, the evidence must be sufficient, "considering the totality of the circumstances, ... to allow a reasonable person to conclude that actual unlawful command influence affected appellant's case." *Id.* at 886. More specifically,

credible evidence that a person who had some particular knowledge relevant to appellant's case reasonably understood that [a] commander had told him not to testify would, unless rebutted by the government, trigger a presumption that the witness had complied with the commander's order. *United States v. Treakle*, 18 M.J. at 657.[3] This, coupled with a showing that the evidence in question was relevant to some material aspect of appellant's case *and that its absence caused substantial harm,* would shift the burden of persuasion to the government. . . .

. . . .

... In ... cases ... involving potential (rather than actual) witnesses, there is a gap between the presumption flowing from a finding that unlawful pressure influenced the recipient and a finding of any *prejudicial effect* on the appellant's case. In the potential witness situation, what is needed to fill the gap is a showing that the witness would have affected the case or would even have been called.

*Id.* at 887–88 (emphasis and footnote added).[4]

---

**2.** *See United States v. Scott,* 20 M.J. 1012 (A.C.M.R.1985), for a discussion of this evidence. Although the affidavit of Major Michael A. Buchanan has not been filed in this case, we take judicial notice of that affidavit, filed with us in *United States v. Scott, supra. See United States v. Surry,* 6 M.J. 800 (A.C.M.R.1978), *pet. denied,* 7 M.J. 62 (1979). We are also aware of the statement made by the 3d Armored Division's Secretary of the General Staff (Record at 36–40, *United States v. Moore,* CM 445512 (A.C.M.R. 12 Feb. 1985) (unpub.)), and the testimony of Sergeant First Class Larry J. Parks (Record at 37, *United States v. Smith,* CM 444370 (A.C.M.R. 23 Jul. 1985) (unpub.)).

**3.** The cited passage in *Treakle* is as follows:

A finding that unlawful pressure has been brought to bear in violation of Article 37 triggers a rebuttable presumption that the recipient of the unlawful pressure was in fact influenced. As we construe this presumption of prejudice, the target and the content of the unlawful pressure define the nature and extent of the presumed influence and the resulting prejudice.... Consequently, if any prospective character witness for appellant directly or indirectly heard General Anderson's message and reasonably understood him to be discouraging favorable character testimony, that unlawful pressure would trigger a rebuttable presumption that the witness was in fact influenced not to give favorable character testimony.

**4.** We also pointed out that "[Sergeant Cruz] has come to us without such evidence. He has merely presented evidence which shows that it is *possible* that his chain of command was deprived of their discretion ... or that it is *possible* that he was deprived of favorable testimony. This is not enough to shift the burden of persua-

In order to raise the issue of a "prejudicial effect" in his case resulting from deprivation of witnesses, appellant must produce or point out evidence on six matters:

(a) Did appellant have any potential favorable character witnesses? (Not all soldiers do; if appellant did not, there is no possibility that he suffered prejudice because of the absence of favorable character testimony.)

(b) If so, did they hear or hear about General Anderson's statements? (If they did not, what they might have done if they had is obviously irrelevant.)

(c) If so, did they understand General Anderson to be telling them not to testify?[5] (Again, if they did not, what they might have done if they had is obviously irrelevant.)

(d) If so, was their testimony wanted by appellant's trial defense counsel? (Such testimony is not always wanted. Sometimes it opens the door to very damaging rebuttal evidence. Other tactical considerations may also militate against its use. If the testimony would not have been used, appellant obviously would have suffered no prejudice from its absence.)

(e) If so, was their testimony admissible? (It may, for example, have been cumulative. If the testimony would not have been admissible, appellant again obviously would have suffered no prejudice from its absence.)

(f) If so, would the absence of their testimony have substantially prejudiced appellant's case? (As an extreme example, testimony that an accused was neat and courteous might be incapable of influencing the outcome of a murder case. The answer to this question, of course, will depend primarily on an evaluation of the record in the case before us and not solely on any extra-record evidence appellant might produce.)

Addressing the situation in the 3d Armored Division after General Anderson had given his lectures and before any remedial action had been taken, we said, in *United States v. Treakle:*

> While we have no direct evidence that anyone who could have given favorable character testimony for appellant was influenced by General Anderson's comments, those comments were ... reasonably understood by many persons to discourage such testimony and by some to discourage such testimony on the merits as well as during sentencing proceedings.
>
>  . . . .
>
> In this case, [several of Sergeant Treakle's supervisors] gave favorable character testimony for appellant during the sentencing phase of the trial. This fact is persuasive evidence that appellant was not deprived of favorable character evidence by General Anderson's comments, but we need not and do not decide this question. We will assume that he was.

18 M.J. at 657 (footnotes omitted). In *Treakle,* we then proceeded to dispose of the question at hand on other grounds. In the case at bar, we do not have that option because the question before us is whether our appellant has succeeded in raising an issue for us to decide.

■ As to questions (b) and (c), we hold that the evidence before us satisfies those portions of appellant's burden. With respect to question (b), by the time appellant's case was tried, General Anderson had given his lectures to most elements of his command and his perceived desires were very likely to have been communicated throughout the chain of command.

sion to the government." 20 M.J. at 886 (emphasis in original). This, of course, was a description of the quality of Sergeant Cruz's evidence which was set forth in the opinion so that it could be compared with the prescribed standard. It should not be confused with the standard itself. *Cf. United States v. Whitaker,* 21 M.J. 597 (A.C.M.R.1985) (Yawn, S.J., dissenting).

**5.** The presumption that potential witnesses who had been subjected to unlawful influence succumbed and complied comes into play to assist an appellant at this point. This is an example of the "special solicitude" accorded to allegations of unlawful command influence. *See Cruz,* 20 M.J. at 879.

With respect to question (c), the evidence before us furnishes a less reliable basis for determining which message a given listener may have understood General Anderson to have intended. For one thing, we have no scientific sample of those who heard him from which we could extrapolate the interpretations of others. On the other hand, we do have evidence that some of the leaders who understood General Anderson to be discouraging favorable character testimony passed that message down their portions of the chain of command. In addition, we recognize the fact that there are informal networks in the Army through which such information travels laterally as well as vertically.

Thus, from the evidence before us, a reasonable person could conclude that at least one member of the chain of command[6] of every 3d Armored Division soldier believed that General Anderson did not want favorable character testimony for accused soldiers.[7] (This applies to cases tried within General Anderson's command after his message had been widely disseminated but before remedial measures were undertaken.) As to such a potential witness, the rebuttable presumption would apply that he had succumbed to unlawful pressure and complied with General Anderson's perceived desires. *United States v. Cruz*, 20 M.J. at 885–886; *United States v. Treakle*, 18 M.J. at 657.

With respect to the remaining questions, we hold that the evidence before us does not satisfy appellant's burden. Appellant has failed to "fill the gap between the presumption flowing from a finding that unlawful pressure influenced the recipient and a finding of any prejudicial effect in [his] case." *United States v. Cruz*, 20 M.J. at 888. "[W]hat is needed to fill the gap is a showing that the witness would have affected the case or some decision regarding the case or would even have been called." *Id.* As was the case in *Cruz*, "appellant has failed to provide us with even that evidence which is most readily available to him.... [H]e has failed to reveal the identities of the people he believes were in possession of relevant information which would have qualified them to testify in his behalf." *Id.* To sum up, the major gap in appellant's case arises from the fact that we have no evidence that there were any potential character witnesses for appellant. The absence of this information also obscures the answers to the remaining questions. What is required is that appellant "particulariz[e] the manner in which [his] court-martial was adversely influenced by the conduct of the convening authority." *See Silas v. United States*, 21 M.J. 108 (C.M.A.1985) (interlocutory order), *petition for extra-ordinary relief denied*, 21 M.J. 295 (C.M.A.1985) (order). We hold that the issue has not been raised.[8] If appellant has anything further to offer he may petition this court for permission to submit it in connection with a request for reconsideration. *See* Rule 20, CMR Rules of Practice and Procedure.[9]

---

6. By "chain of command" we mean, in this connection, the line of supervisors at the unit level, beginning with the team leader in an infantry squad or his counterpart and ending with the rifle company commander or his counterpart.

7. We specifically confine this holding to favorable character testimony. We find the evidence clearly insufficient to raise the issue of an effect on other evidence and remain convinced, as we were in *United States v. Treakle*, 18 M.J. at 652–53, that it would be unreasonable to conclude that General Anderson was addressing anything other than character evidence. *Contra United States v. Mitchell*, 19 M.J. 905, 906–8 (A.C.M.R.1985).

8. *Contra United States v. Neblett*, 20 M.J. 833 (A.C.M.R.1985). "[W]e find that the trial defense counsel raised the issue of whether the appellant was suffering the effects of unlawful command influence [where only general evidence such as that considered in *Treakle* was presented, but no evidence of a connection with the case at bar]." 20 M.J. at 835. Obviously, we disagree, since such a holding is contradicted by both *Treakle* and *Cruz.*

9. Following the decisions in *Treakle* and *Yslava*, the panels of this court set about applying them to other cases. Some of the resulting panel holdings unfortunately contradicted the en banc holdings in *Treakle* and *Yslava*. It has been suggested that these holdings should be applied to the case at bar. We disagree; panel holdings which contradict the holdings of the court sitting

## IV

Our determination that appellant's claim of actual unlawful command influence merits no relief does not end our responsibility, as we must also consider whether the appearance of unlawful command influence exists. In *Cruz* we pointed out that "the appearance doctrine was devised to insure that public confidence in the military justice system would not be undermined by the appearance that the accused was prejudiced by unlawful command infleunce in a given case if that case were subjected to public attention" and that "we are concerned with an opinion held by a substantial segment of the reasonable members of the public." 20 M.J. at 882. Will public confidence in the military justice system be undermined if we take no further action in the case at bar based on the evidence before us? We believe not.

"It is axiomatic that the best way to dispel the appearance of evil is to publish the truth about the situation." *Cruz*, 20 M.J. at 890. Furthermore, "[t]he appearance of unlawful command influence will normally become relevant only in the absence of actual unlawful command influence because the process of publicly determining whether the appellant has been prejudiced by actual unlawful command influence, and remedying it if he has, will normally remove the appearance of unlaw-

ful command influence as well." *Id.* at 891.

As we have seen, the evidence before us in this case is insufficient to allow a reasonable person to conclude that appellant was prejudiced by unlawful command influence. That fact is now a matter of public record. So is the fact that we have thoroughly reviewed appellant's claims and invited him to furnish the missing information, and the fact that it is in his power to supply that information if it exists. On the other hand, wherever there has been a reasonable basis to believe that an appellant has been harmed, we have furnished an effective vehicle for relief. In *United States v. Scott*, 20 M.J. 1012 (A.C.M.R.1985), we confronted the question whether General Anderson had deliberately attempted to influence witnesses. Although that question had previously been addressed in *Treakle* and *Yslava*, we concluded that the appellant's new evidence again raised the issue of disqualification to perform the initial review function. We directed an evidentiary hearing at which the government would either have to prove that General Anderson was not disqualified or provide appellant with a new initial review. In *United States v. Montesinos*, 21 M.J. 679 (A.C.M.R. 1985), we confronted the question whether the court-martial members who determined

en banc are invalid. *See, e.g., United States v. Johnson*, 706 F.2d 143, 144 (5th Cir.), *cert. denied*, 463 U.S. 1212, 103 S.Ct. 3548, 77 L.Ed.2d 1395 (1983); *Ewing v. Williams*, 596 F.2d 391, 397 (9th Cir.1979); *Polisnik v. United States*, 259 F.2d 951, 952 (D.C.Cir.1958); *Benner v. Terminal R.R. Ass'n of St. Louis*, 348 Mo. 928, 156 S.W.2d 657, 660 (1941), *cert. denied*, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942).

For example, in *United States v. Schroeder*, 18 M.J. 792 (A.C.M.R.1984), a panel observed that "where ... pervasive unlawful influence of witnesses has been established, and there is no evidence or explanation in the record for the failure of defense witnesses to appear, we will *presume* that favorable witnesses have been influenced *to the prejudice of the appellant*." 18 M.J. at 794–95 (emphasis added). The italicized portions of this statement are contradicted by the holdings in *Treakle* and *Cruz* quoted above and are therefore invalid.

Of course, the effect of General Anderson's lectures on the trial of cases within his com-

mand could be addressed by way of factual findings based on circumstantial evidence, plus any direct evidence available. (This is not the approach taken in the quoted portion of *Schroeder*, which attempts to resolve the matter by creating a legal presumption directly contrary to *Treakle*.) However, as we have seen, the evidence is insufficient to sustain a factual finding which would support the result in *Schroeder* or holdings such as those in *United States v. Mitchell*, 19 M.J. 905, 908 (A.C.M.R.1985) and *United States v. Abelon*, 19 M.J. 767, 768 (A.C.M. R.1984).

*Cruz* was decided with the concurrence of the judges who decided *Schroeder* and nearly all of those who have subsequently relied on the erroneous portions of *Schroeder*. Thus the invalid doctrinal statements in *Schroeder* (and in the cases which have followed *Schroeder* in this respect) need cause no further confusion. For examples of cases containing similar invalid holdings based on *Schroeder*, see the appendix to this opinion.

the appellant's sentence had been improperly influenced. Concluding that the evidence raised that issue, we directed an evidentiary hearing at which the government would either have to prove that the members were not in fact influenced or provide appellant with a new sentence hearing.[10] These cases are also part of the public record, and the public record is the raw material from which public confidence in the military justice system is forged.

"The law and the courts concern themselves with the appearance of unlawful command influence because of its deleterious effect on public confidence in the *military justice system....* It is the interests of the *military justice system* itself which the appearance doctrine was designed to protect, since it is the *military justice system* itself which is harmed by the loss of public confidence." *Cruz,* 20 M.J. at 884 (emphasis added); *see Cruz, passim.* The principle behind this emphasis on the reputation of the *military justice system* has important implications concerning the application of the appearance doctrine.

First, since it is public confidence in the military justice *system* that the appearance doctrine was devised to protect, *a fortiori* the public must be satisfied that the military justice *system* is capable of remedying substantial prejudice if it occurs in a trial. This is a far different matter (and a far more realistic approach) than trying to persuade the public that courts-martial are never afflicted by error at the trial level. In the case at bar, it has been demonstrated that there is no reasonable basis for anyone to conclude that our appellant suffered any harm at the trial level. Not only that, but we have also made it plain that a remedy is available to appellant if there is any evidence that he was harmed and that he has the means to supply such evidence if he was harmed.

Second, since it is public confidence in the *military justice* system that the ap-

pearance doctrine was devised to protect, *a fortiori* the public must be satisfied that the *military justice* system is capable of withstanding or, if necessary, rectifying the prejudicial effects of folly or evil on the trial of a court-martial case. This is a far different matter than trying to persuade the public that the entire United States Army is without blemish. In the case at bar, it has been demonstrated that there is no reasonable basis for anyone to conclude that our appellant suffered any harm from General Anderson's actions, whatever his intentions may have been and however ill-advised his actions may have been. Not only that, but we have also made it plain that a remedy is available to appellant if there is any evidence that he was harmed and that he has the means to supply such evidence if he was harmed.

There is no reason to suppose that public confidence in the military justice system will be undermined where, as here, the public record shows that everything reasonable has been done to insure a fair result to the appellant. We are satisfied that in this situation, the appearance of prejudice to appellant will not exist in the minds of reasonable members of the public.

Accordingly, the findings and sentence are, again, affirmed.

Judge FELDER concurs.

## APPENDIX

(Cases referred to in note 9 as examples of invalid holdings.)

1. *United States v. Southers,* 18 M.J. 795, 796 (A.C.M.R.1984). "Since unlawful command influence may have affected appellant's case, appellant is presumed to have been prejudiced ...."

2. *United States v. Thompson,* 19 M.J. 690, 692 (A.C.M.R.1984):

Given the target and content of Anderson's comments, the "nature and extent of the presumed influence" is that, in

---

**10.** In the case at bar, neither of these problems has arisen, since appellant elected trial by a military judge sitting alone and General Ander-

son's superior commander performed the initial review.

each case tried within the 3d Armored Division after General Anderson began disseminating his message, the accused may have been deprived of favorable character witnesses. *See United States v. Schroeder*, 18 M.J. 792 (ACMR 1984). We say "may have been" because General Anderson's comments would have affected the presentation of the defense case only if prospective character witnesses for the accused directly or indirectly heard General Anderson's comments. For purposes of our analysis, however, we presume that appellant was deprived of favorable character witnesses, and thereby prejudiced, since the content of General Anderson's statements and his reiteration of them throughout the command create at least the appearance that unlawful command influence tainted appellant's trial. *See United States v. Johnson*, [34 CMR 328 (C.M.A. 1964)].

Having defined the "presumption of prejudice" created by the unlawful command influence exercised by General Anderson, we need only consider whether the Government has rebutted this presumption....

(This portion of *Thompson* also fell prey to another fallacy repudiated by *Cruz, i.e.,* the premise that actual unlawful command influence and the appearance of unlawful command influence are to be treated as interchangeable factors in the unlawful command influence equation. Thus, at least two of the basic premises on which *Thompson* was decided were invalid. We note in this connection that *Treakle* also fell prey to the same fallacy, 18 M.J. at 658, as did, *e.g., United States v. Mitchell,* 19 M.J. 905 (A.C.M.R.1985).)

3. *United States v. Cox,* 19 M.J. 721, 723 (A.C.M.R.1984). "Once the spectre of unlawful command influence is raised, a presumption of prejudice arises. *See United States v. Johnson,* [34 C.M.R. 328 (C.M.A. 1964)]; *United States v. Treakle,* 18 M.J. 646 (ACMR 1984) [(en banc), *pet. granted,* 20 M.J. 131 (C.M.A.1985)]; *United States v. Schroeder,* 18 M.J. 792 (A.C.M.R.1984)."

4. *United States v. Abelon,* 19 M.J. 767, 768 (A.C.M.R.1984). "The presumption that the appellant was prejudiced by General Anderson's actions remains unrebutted...."

5. *United States v. Addison,* 19 M.J. 941, 945 (A.C.M.R.1985). "We hold that ... the appellant, to his prejudice, is presumed to have been deprived of favorable character testimony as the result of unlawful command influence."

6. *United States v. Conway,* SPCM 19479, (A.C.M.R. 27 Feb. 1985) (unpub.). The unlawful influence consisted of statements by General Anderson which were understood by many servicemembers within the general courts-martial jurisdiction of the 3d Armored Division as discouraging favorable character testimony. *See United States v. Thompson,* 19 M.J. 690 (ACMR 1984); *United States v. Treakle,* 18 M.J. at 657. Since General Anderson's conduct creates at least the appearance that unlawful command influence tainted appellant's trial, appellant is entitled to the benefit of a rebuttable presumption that he was prejudiced thereby. *See, e.g., United States v. Mitchell,* [19 M.J. 905 (A.C.M.R.1985)]; *United States v. Abelon,* [19 M.J. 767 (A.C.M.R.1984)]; *United States v. Thompson,* 19 M.J. at 692.

7. We have considered both of the separate opinions in *United States v. Brown,* 21 M.J. 625 (A.C.M.R.1985), and the dissent in *United States v. Whitaker,* 21 M.J. 597, 600 (A.C.M.R.1985). In part for the same reasons which compel us to reject the foregoing cases, we cannot accept these more recent cases as valid guidance for the case at bar.

We disagree with *Brown*'s application of the rule of *stare decisis* and its construction of *Cruz.* In addition, both opinions in *Brown* assume that *Treakle* and *Yslava* found that General Anderson's actions had affected *all* cases tried within his jurisdiction. In fact, those cases held that, while under the circumstances General Anderson's actions constituted a violation of Article 37, 10 U.S.C.A. § 837, it was also neces-

sary to show that this conduct prejudicially affected a particular individual's case.

The dissent in *Whitaker* fails to come to grips with the following holdings in *Cruz:*
> [C]redible evidence that a person who had some particular knowledge relevant to an accused's case reasonably understood that [his] commander had told him not to testify would, unless rebutted by the government, trigger a presumption that the witness had complied with the commander's order. *United States v. Treakle*, 18 M.J. at 657. This, coupled with a showing that the evidence in question was relevant to some material aspect of appellant's case and that its absence caused substantial harm, would shift the burden of persuasion to the government....

20 M.J. at 887, and that
> [i]n other cases, such as those involving potential (rather than actual) witnesses, there is a gap between the presumption flowing from a finding that unlawful pressure influenced a recipient and a finding of any prejudicial effect in the appellant's case.

20 M.J. at 888.

NAUGHTON, Judge, concurring:

I have expressed my concern in earlier opinions of this court that there was no need to reformulate the analytical model to be utilized for resolving issues of unlawful command influence set out by the Court of Military Appeals in *United States v. Johnson*, 34 C.M.R. 328 (C.M.A.1964).[1] My reading of *Johnson* is that because of the nature of unlawful command influence and the problems of proof that its often subtle effects may have on a given case, the Court of Military Appeals created a rebuttable presumption of prejudice in an accused's favor to lessen the disadvantage he has in successfully raising this issue. The requirement that an accused must now "produce or point out evidence" on the six matters listed in the majority opinion ap-

pears to have lessened or neutralized the benefit of the rebuttable presumption of prejudice which *Johnson* provided.

Nevertheless, the rule of stare decisis properly obligates me to follow this court's decision in *United States v. Cruz*, 20 M.J. 873 (A.C.M.R.1985) (en banc), as the controlling precedent in resolving issues of unlawful command influence brought before the United States Army Court of Military Review.

Even though I may disagree with some of the holdings in *United States v. Cruz* and *United States v. Treakle*, I agree that Senior Judge Wold has correctly articulated those holdings and correctly applied them to the case at bar.

---

**1.** *See United States v. Cruz,* 20 M.J. 873, 894 (A.C.M.R.1985) (en banc) (Naughton, J., dissenting) and *United States v. Treakle,* 18 M.J. 646, 661 (A.C.M.R.1984) (en banc) (Naughton, J., concurring), *pet. granted,* 20 M.J. 131 (C.M.A. 1985).