# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, K.M. MCDONALD, M.C. HOLIFIELD**
Appellate Military Judges

**UNITED STATES OF AMERICA**

**v.**

**MICHAEL T. JAY**
**LOGISTICS SPECIALIST FIRST CLASS (E-6), U.S. NAVY**

**NMCCA 201400048**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 16 October 2013.
**Military Judge:** CDR Ian Thornhill, JAGC, USN.
**Convening Authority:** Commander, Navy Recruiting Command, Millington, TN.
**Staff Judge Advocate's Recommendation:** LCDR J.E. Frajman II, JAGC, USN.
**For Appellant:** Maj John J. Stephens, USMC.
**For Appellee:** LT Ann E. Dingle, JAGC, USN; LT James Belforti, JAGC, USN.

**30 September 2014**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of six specifications of violating a lawful general order and two specifications of adultery, in violation of Articles 92, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934. The military judge sentenced the appellant to reduction to pay grade E-1 and a bad-conduct discharge. The convening authority (CA)

approved the sentence as adjudged and, except for that part of the sentence extending to a bad-conduct discharge, ordered it executed. The pretrial agreement had no effect on the sentence.

In his sole assignment of error, the appellant contends that the disparity in dispositions between his case and that of a fellow recruiter – who engaged in closely related misconduct, but was administratively discharged without punishment – renders the appellant's sentence inappropriately severe. We disagree.

After carefully considering the record of trial and the submissions of the parties, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Background

While assigned as the leading petty officer in charge of two Navy Recruiting Stations (NRS), the married appellant engaged in sexual relationships with two future Sailors,[1] CW and NE. The appellant had sexual encounters with CW approximately ten times, all at the Adrian, Michigan recruiting office. He had sexual encounters with NE twice, both times at the Jackson, Michigan NRS. Additionally, he both sexually harassed and attempted to form prohibited personal relationships with two others, CB and ER.[2]

The appellant's attempt to form a personal relationship with CB involved asking her, via text messages, to engage in sexual acts. He repeatedly asked her to meet him alone at the recruiting office. He also inquired as to whether she was on birth control, and once implied they could have sex in a Government vehicle. These requests and comments were not welcomed by CB.

The appellant's attempt to form a personal relationship with ER involved asking her, via text messages, to send him sexual photos of herself. These texts, sent by the appellant using his government cell phone, were unwanted by ER.

Unrelated to the appellant's misconduct, another recruiter assigned to the same NRS, Aviation Structural Mechanic Second

---

[1] A future Sailor is "[a]ny person who accesses into the [Delayed Entry Program] of any of the Armed Forces and has agreed to commence active duty or active duty for training at a later date." Commander, Navy Recruiting Command Instruction (COMNAVCRUITCOMINST) 5370.1F, dated 12 October 2011.

[2] The sexual relationships and attempts to form personal relationships were prohibited by COMNAVCRUITCOMINST 5370.1F. The sexual harassment was prohibited by COMNAVCRUITCOMINST 5354.2B, dated 19 August 2009.

Class (AM2) O also had sex with CW and NE.  According to CW, the sex occurred before she applied to join the Navy.  According to AM2 O, the sex with NE occurred at AM2 O's mother's home.

Initially, both the appellant and AM2 O were charged at special courts-martial.  The CA subsequently approved AM2 O's request for administrative separation in lieu of trial (SILT).  There is nothing in the record to indicate the appellant ever requested a SILT.

While the appellant's original charges were pending special court-martial, NE amended her statement to allege the appellant had sexually assaulted her.  After an investigation pursuant to Article 32, UCMJ, the CA referred the present charges against the appellant to a general court-martial.

On 16 October 2013, the appellant entered into a pretrial agreement in which he agreed to plead guilty to some of the charges and specifications in exchange for, *inter alia*, the CA withdrawing and dismissing without prejudice those charges and specifications to which the appellant pleaded not guilty.  These withdrawn and dismissed charges included sexual assault, assault consummated by a battery, and additional sexual harassment and orders violations.

### Disposition Disparity

We review sentence appropriateness *de novo*.  *United States v. Baier*, 60 M.J. 382, 383-84 (C.A.A.F. 2005).  In determining whether a sentence is appropriate we will only engage in sentence comparison in the rare instances of highly disparate sentences in closely-related cases.  *United States v. Lacy,* 50 M.J. 286, 288 (C.A.A.F. 1999).  If this threshold is met, we will then determine whether any rational basis for the disparity exists.  *Id.*

As AM2 O was neither tried nor sentenced by a court-martial, the issue before us involves differences of initial disposition, rather than sentences.  It is, however, within this court's broad power under Article 66(c), UCMJ, to consider such matters in reviewing sentence appropriateness.  *United States v. Stotler,* 55 M.J. 610, 612 (N.M.Ct.Crim.App. 2001) (citing *United States v. Noble,* 50 M.J. 293, 295 (C.A.A.F. 1999).

We note the great disparity between AM2 O's administrative discharge and the appellant's conviction and punishment.  However,

3

we conclude the appellant's and AM2 O's offenses are not closely related.[3]

First, although the appellant and AM2 O were recruiters in the same office engaged in similar misconduct, they did not do so as part of any common scheme. There is little evidence either knew of the other's misconduct with the future Sailors while it was occurring.

Second, the appellant was in charge of the two NRS's and senior to AM2 O. The appellant was the most senior person in the Navy with whom any of the future Sailors dealt during the recruiting process.

Third, there are important differences between the sexual activity with the two women. The appellant used the two NRS's to engage in his sexual encounters. He used his Government cell phone to arrange these encounters. And his sexual relationship with these two future Sailors involved numerous meetings over many months. There is no evidence in the record indicating the same of AM2 O.

Fourth, the appellant's misconduct is significantly greater, in both scope and magnitude. AM2 O's misconduct appears to have been limited, at most, to two violations of a lawful general order, i.e., engaging in a sexual relationship with NE while she was a future Sailor and taking three future Sailors on a trip to an amusement park. In contrast, the appellant was accused of sexual harassment, multiple general orders violations and adultery.

Assuming, *arguendo,* that the appellant and AM2 O's cases were closely related, we find both a rational basis for, and a lack of improper or discriminatory intent in, the CA's decision to dispose of these cases in different ways.

Moreover, even without the aforementioned differences between the two cases, the CA was well-within his authority to refer the charges against the appellant to a general court-martial. In addition to the offenses to which he pleaded guilty, the appellant was charged with sexual assault and assault consummated by a battery. The Article 32, UCMJ, investigating officer found probable cause to believe the appellant committed these offenses – offenses clearly appropriate for referral to a general court-

---

[3] The Court of Appeals for the Armed Forces has given the following examples of "closely related" cases: "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared[.]" *Lacy,* 50 M.J. at 288.

4

martial. *See Noble,* 50 M.J. at 295 (finding it appropriate for a Court of Criminal Appeals to cite charges of which an appellant was acquitted for purposes of examining a CA's decision to refer an appellant's case to a court-martial while administratively disposing of a closely related case). We find this fact alone to be a sufficient good and cogent reason for the difference in the dispositions.

The appellant also argues that, but for an unproven allegation of sexual assault, he would not have found himself before a general court-martial. That may be true, but the record contains no evidence to indicate the CA did not believe NE's allegations, or that he considered the likelihood of conviction to be negligible. Nor is there evidence showing the CA was swayed in his referral decision by external pressures. What we do have is an agreement by which the CA agreed to forego prosecution on those serious charges in exchange for the appellant's pleas at a general court-martial. We decline to guess at the respective motivations for this agreement, but note that the CA and appellant both received the benefit of their bargain.

## Sentence Appropriateness

Having concluded the disparity in disposition of the appellant's and AM2 O's cases does not establish grounds for relief, we next examine whether the sentence is appropriate on its own. In accordance with Article 66(c), UCMJ, a Court of Criminal Appeals "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

After review of the entire record, we find that the sentence is appropriate for this offender and his offenses. Furthermore, we conclude that granting sentence relief at this point would be to engage in clemency, a prerogative reserved for the CA, and we decline to do so. *Healy*, 50 M.J. at 395-96.

5

**Conclusion**

The findings and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court